Louise A. BATYKO, Plaintiff,

v.

PENNSYLVANIA LIQUOR CONTROL BOARD, Defendant.

Civ. A. No. 77–34.

United States District Court, W. D. Pennsylvania.

Jan. 18, 1978.

· Stanley M. Stein, Pittsburgh, Pa., for plaintiff.

Kenneth W. Makowski, Asst. Atty. Gen., Pa. Liquor Control Bd., Harrisburg, Pa., for defendant.

## OPINION

MARSH, District Judge.

This case was tried to the court pursuant to the Civil Rights Act of 1964 as amended

by the Equal Employment Opportunity Act of 1972. Following trial and the submission of proposed Findings of Fact and briefs, the court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Plaintiff, Louise A. Batyko, is a female citizen of Pennsylvania and at all times relevant hereto was an employee within the meaning of § 701(f) of Title VII of the Civil Rights Act of 1964, as amended.

2. Defendant, Pennsylvania Liquor Control Board (Board), was, at all times relevant hereto, an employer within the meaning of § 701(b) of Title VII of the Civil Rights Act of 1964, as amended.

3. The court has jurisdiction of the within matter pursuant to § 706(f)(3) of Title VII of the Civil Rights Act of 1964, as amended, plaintiff having complied with all requirements of the Act to exhaust federal and state administrative remedies, to-wit:

(a) Plaintiff was terminated from her employment on January 24, 1975, and filed a charge with the Equal Employment Opportunity Commission on January 30, 1975;

(b) Plaintiff filed a discrimination charge with the Pennsylvania Human Relations Commission on March 17, 1975;

(c) The Equal Employment Opportunity Commission issued a right to sue letter on October 23, 1976, and plaintiff filed the complaint in the above-captioned action in this court on January 11, 1977.

4. Sometime prior to October 5, 1974, the plaintiff took a Commonwealth of Pennsylvania Civil Service Examination.

5. Plaintiff's grade on her Civil Service Examination with the addition of a veterans' preference which she received resulted in her having the highest score of those job applicants on the list certified by the Civil Service Commission for the job of liquor store clerk in Westmoreland County, Pennsylvania. A copy of this certification list was received by Gerald P. Jones, the supervisor for state liquor stores in Westmoreland County.

6. Plaintiff signed an application for a job as liquor store clerk and in September, 1974, she was interviewed by Jones.

7. At that time, a vacancy for a liquor store clerk existed at the Franklin Plaza store, Murrysville, Westmoreland County, Pennsylvania. The job of liquor store clerk requires heavy physical labor as well as duties at the sales counter.

8. Because plaintiff was number one on the Civil Service list, and had applied for a job as a liquor store clerk, the Board was required to offer plaintiff a job to fill the vacancy in Westmoreland County. She had to be hired for the position providing she was willing to accept it.

9. During the interview with plaintiff, Jones outlined the duties of a liquor store clerk emphasizing the heavy physical labor required in unloading, carrying and stacking heavy cartons of liquor. He asked plaintiff to lift a heavy carton of liquor from a stack of cartons which she did.

10. Jones privately entertained some doubt that plaintiff would be able physically to perform the required labor since she was only 5 feet tall, weighed 118 pounds, and was about 56 years of age. Nevertheless, plaintiff stated that she would not sign a waiver form brought to her attention until she tried the job.

11. Jones hired the plaintiff as he was required to do, and she began her employment on October 5, 1974 at the Franklin Plaza Store in Murrysville.

12. In Westmoreland County the Board has 84 or 85 full-time employees. Seven of them are women; one woman is a general manager, two are assistant managers, and four are clerks. There are 29 part-time employees paid by the hour; 16 are women and 13 are men. Hourly employees are not required to take a Civil Service examination and are hired without preference to veterans.

13. By law the full-time employees are hired from the Civil Service list. Veterans and widows of veterans have preference due largely to ten points being added to their examination score. The male veter-

ans taking the examination greatly outnumber female veterans and widows of veterans. Three non-veterans must be in succession at the top of the list before one of them can be hired.

14. The males and females employed by the Board in Westmoreland County number 71 who received veterans' preference and 14 who did not receive veterans' preference. Veterans' preference accounts for the majority of males hired by the Board.

15. In all counties, except Allegheny and Philadelphia, liquor store clerks receive on-the-job training by the manager and assistant manager of the store and by observing and asking questions of other liquor store clerks.

16. Due to a vacancy, there was no training manager for Westmoreland, Fayette, Washington and Greene counties at the time plaintiff was hired. Herman K. Herlman, Jr., was the training manager for Allegheny County. The training school in Allegheny County was strictly for clerks in Allegheny County. There were no training schools in the outlying counties. When free in Allegheny County, Herlman "trained" newly hired clerks in stores in the outlying counties giving them two or three hours of his time and later a follow-up visit. The preponderating portion of their training, however, was on-the-job training. Altogether Herlman had 150 to 160 stores to cover.

17. Upon a visit to Franklin Plaza Herlman observed plaintiff working at the counter and gave her training instructions.[1] He gave her some instruction on the "16 steps" relating to the cash register at the counter, and helped her find merchandise in the bins. He found that she had been adequately instructed on the job in connection with the "16 steps".[2] The plaintiff did not mention any training problem to Herlman.

18. Earlier in the year, and before Herlman became extremely busy opening a new store in Allegheny County and visiting the stores in the four outlying counties, he had given three male clerks several hours of training. One of them, a clerk at Franklin Plaza, William R. Scheibe, testified that he received only one hour of training from Herlman (Tr. p. 279). When Herlman finished training clerks for the new store in Allegheny County, he telephoned Franklin Plaza for plaintiff's schedule so he could give her additional training but found that she had been terminated.

19. Plaintiff had difficulty in performing the required physical work, and she frequently requested the male liquor store clerks to do some of the heavy labor work for her.[3] The co-workers complained to management about the inability of the plaintiff to perform physical labor (Tr. pp. 222, 248–250) and that they were required to do her work.

20. At the end of October, 1974, Jones notified plaintiff that she was to be terminated in two weeks because she was physically incapable of doing all the work required of a liquor store clerk (Pltf's Ex. 1). She was not terminated until January 24, 1975 (Def's Ex. 2).[4]

21. The plaintiff was not terminated from her employment as a liquor store clerk because she had not been properly trained. In all respects except physical labor, plaintiff, as a beginner, performed her duties adequately. There was no course of training which would provide plaintiff the physical strength to lift, carry and stack cartons of liquor. There was no training course for

---

1. In plaintiff's Findings of Fact submitted by counsel on July 29, 1977, it was stated that plaintiff received two hours of incidental training at the counter from the training manager. At trial, plaintiff denied this.

2. The content of the 16 steps was recited at Tr. pp. 139–140.

3. E. g. pp. 196, 204, 224, 226, 240, 274, 277–279, 288, 310–311, 316, 320, and Court Ex. 1 being the deposition of William R. Scheibe at Dep. pp. 5–6 admitted in evidence (Tr. pp. 291–292).

4. Plaintiff's letter of termination (Def's Ex. 2) specified that she could appeal to the Civil Service Commission or file a grievance as provided in the Collective Bargaining Agreement. It does not appear that plaintiff exercised either right but within a week of discharge, she filed a complaint with the EEOC.

anyone, male or female, on how to carry cases of liquor or how to unload a truck (Tr. p. 292). There was no training course for anyone, male or female, on how to increase an employee's strength or ability to lift heavy weights.

22. Plaintiff was not terminated because of her sex, but because of her inability to perform all of the physical work expected of all clerks. No training existed which could improve her ability to physically execute her duties of lifting, carrying and stacking cartons of liquor. Some of the heavier cartons each weighed 42 pounds.

23. After the defendant heard that plaintiff was going to file a charge with the Human Relations Commission and the EEOC, plaintiff's co-workers were requested by James E. Hanawalt, the defendant's personnel analyst, to put their complaints about plaintiff to management in writing.[5]

24. Plaintiff's co-workers, namely Marie Widmer, a female clerk, Blair Schumaker, the manager, Anthony Farrell, the assistant manager and William R. Scheibe, a male clerk, put their complaints in writing. These written evaluations were made available to the EEOC and the Human Relations Commission. At the trial the foregoing co-workers testified that the plaintiff was incapable physically of doing the heavy work required of a liquor store clerk (See finding 19).

25. There was no proof that any male employees who were unable physically to perform physical labor were maintained in their employment.[6]

26. A certain amount of team work was performed among the employees; the employees with seniority sometimes were assigned to work at the counter in preference to newly employed clerks.

**CONCLUSIONS OF LAW**

1. Plaintiff is an "employee" within the meaning of Title VII of the Civil Rights Act of 1964, as amended (Tr. p. 5).

2. Defendant is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended (Tr. p. 5).

3. Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment based on sex (Tr. p. 5).

4. Jobs which involve heavy labor or significant physical strength must be made available to all. *Weeks v. Southern Bell Telephone & Telegraph Co.*, 408 F.2d 228 (5th Cir. 1969) (Tr. p. 5).

5. Even when standards of physical strength are applied uniformly, they must be shown to be reasonably necessary to job performance. *Smith v. Troyan*, 10 E.P.D. ¶ 10,263 (6th Cir. 1975) (Tr. p. 5).

6. Where standards of physical strength are not applied uniformly to men and women, an employer may be guilty of discrimination on the basis of sex. *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711 (7th Cir. 1969) (Tr. p. 5).

7. Title VII of the Civil Rights Act expressly prohibits discrimination on the basis of sex in the administration of training programs. 42 U.S.C. § 2000e–2(d). *Newman v. Avco Corp.*, 7 E.P.D. ¶ 9117 (M.D.Tenn.1973) (Tr. p. 5).[7]

8. In Westmoreland County, the defendant provided no training for males which was not provided for females. Training of all new employees was on-the-job training. The only formal training provided to other employees by Mr. Herlman which was not provided to the plaintiff was training in sales counter procedure which plaintiff already was performing adequately at the time Mr. Herlman visited the store.

---

**5.** Although defendant ordinarily had a policy against permitting bargaining unit employees to evaluate or testify against one another, it was not an invariable practice.

**6.** Plaintiff's witness William F. McKnight was physically able to do the required labor when he was hired. He developed heart trouble and

was advised not to lift more than 20 pounds. Mr. McKnight testified that he performed all the required physical labor despite the advice from his doctor (Tr. p. 150).

**7.** The Conclusions of Law numbered 1 through 7 were agreed to by counsel. See Tr. p. 5.

9. No training existed which enabled an employee to lift, carry and stack heavy cartons beyond his or her physical strength.

10. Standards of physical strength were applied uniformly to men and women hired as liquor store clerks.

11. The plaintiff was not terminated from her employment because of lack of training in the functions of a liquor store clerk.

12. The plaintiff was not terminated from her employment because of discrimination on the basis of sex.

13. The defendant demonstrated by a preponderance of the evidence that plaintiff was discharged for a legitimate non-discriminatory reason. The plaintiff was terminated from her employment because she as an individual was incapable physically of adequately performing the physical labor required of a liquor store clerk, and because some of her physical work had to be performed by other clerks in the store in addition to their own work.

An appropriate order will be entered in favor of the defendant.