Florence HELBLING

v.

UNCLAIMED SALVAGE AND FREIGHT CO., INC.

Civ. A. No. 78–589.

United States District Court, E. D. Pennsylvania.

May 19, 1980.

Stephen I. Weiss, Moskowitz & Zamparelli, Langhorne, Pa., for plaintiff.

Ronald W. Shipman, Easton, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

The plaintiff, Florence Helbling, brought this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging that the defendant, her employer, denied her a promotion to the position of store manager on the basis of her sex. The question of liability was tried by the Court on April 16–18, 1980. For the reasons hereinafter set forth, the Court finds that defendant denied plaintiff a promotion on the basis of her sex, in violation of Title VII.

The parties entered into the following stipulation of fact:

Plaintiff was hired as a cashier by Defendant on August 8, 1976, to work in its Levittown store. The manager at the time Plaintiff was hired was Michael Smith. Michael Smith left the employ of Defendant on October 16, 1976. At that time, Howard Feuerbach worked for Defendant as a supervisor for all its stores and was in charge of interviewing applicants for the position of manager of the Levittown store. Howard Feuerbach interviewed Ray King for the position of manager of the Levittown store. Ray King was hired as a trainee on November 1, 1976. On November 8, 1976, Florence Helbling was officially placed on the payroll of Defendant as assistant manager of the Levittown store. Florence Helbling continued in this position until sometime in January of 1977. On February 9, 1977, Plaintiff left the employ of the Defendant.

According to plaintiff's testimony, she held a series of retail jobs before coming to work for defendant; most of these positions were either temporary or part-time. While plaintiff was hired by defendant as a part-time cashier, her hours of work and duties gradually increased so that she assumed the duties of head cashier, scheduling the work of other cashiers.

Both plaintiff and Michael Smith testified that, while he managed defendant's Levittown store, he trained plaintiff in the duties of assistant manager. She learned to perform the following duties: setting up and posting daily work schedules, supervising employees, checking inventory, ordering merchandise, counting contents of cash drawers, and preparing daily reports of receipts. Michael Smith gradually delegated these tasks to plaintiff, and informed defendant's management that he was doing so. Smith requested that plaintiff be given the position of assistant manager, but defendant did not agree at the time. Before Smith left defendant's employ on October 16, 1976, plaintiff was independently performing all of the managerial duties listed above.

On October 16, 1976 Michael Smith gave plaintiff the keys to the store and informed her that he was resigning. He had not informed defendant's management that he was leaving, and plaintiff called the President, Joseph Colabella, to inform him.

The Levittown store was without a manager from October 16 through November 1, 1976. During that period, defendant sent its supervisor, Howard Feuerbach, to supervise the operations of the Levittown store and to recruit a new manager. During this period, plaintiff acted as the manager and performed the following managerial duties: opening and closing the store, setting up and posting daily work schedules, handling customer complaints, supervising personnel, taking inventory, placing orders, counting money in the register drawers, placing money in the safe, making daily reports to the main office, counting daily receipts and making bank deposits.

All of plaintiff's witnesses testified that, during plaintiff's tenure with defendant, both male and female employees, including plaintiff, participated in unloading trucks and carrying furniture and other heavy items. Shipments of large and heavy items arrived only occasionally.

After Michael Smith left, defendant placed newspaper ads seeking a manager for the Levittown store. Defendant's Pres-

ident Joseph Colabella testified that it was Howard Feuerbach's responsibility to interview candidates for the position and recommend the candidate he considered best qualified to Mr. Colabella for final interview and approval.

Plaintiff requested that Mr. Feuerbach consider her for the manager's position. He told her that it was not necessary for her to file a formal application, since her application was on file in the main office. When she inquired a second time about the manager's position, Mr. Feuerbach told her that it was the policy of company President Joseph Colabella not to consider women for the store manager position. Sherry Leonard, an employee of defendant at the time, testified that she overheard Mr. Feuerbach make this statement to the plaintiff.

■ Defendant objected, on hearsay grounds, to the testimony of plaintiff and Sherry Leonard as to Mr. Feuerbach's remark that it was defendant's policy not to hire women as managers. Rule 801(d)(2)(D) of the Federal Rules of Evidence provides that a statement made by a party's "agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship" is not hearsay. The Third Circuit has held that Rule 801(d)(2)(D) permitted the admission of testimony that a managerial employee of defendant had informed plaintiff that he was not hired because he was "blacklisted". The Court found that the managerial employee had at least implied authority to inform plaintiff of the reason he was not hired. *Baughman v. Cooper-Jarrett, Inc.*, 530 F.2d 529, 531 (3d Cir.), cert. denied, 429 U.S. 825, 97 S.Ct. 78, 50 L.Ed.2d 87 (1976). Similarly, here, Mr. Feuerbach was a managerial employee to whom defendant's president had assigned major responsibility for hiring the Levittown store manager. His statement to plaintiff was a statement of company policy, made within the scope of his authority. Defendant did not produce Mr. Feuerbach to refute this testimony, though Mr. Colabella testified that he could have located him.

A short time after Mr. Feuerbach advised plaintiff that she would not be considered for the position because she was a woman, defendant hired Ray King as manager of the Levittown store on November 1, 1976. Mr. King had replied to the newspaper ad, was interviewed and recommended by Mr. Feuerbach, and Mr. Colabella gave final approval to his hiring. On November 9, 1976, plaintiff was made assistant manager of the Levittown store. In January, 1977, after the Christmas holiday season, Mr. Colabella told plaintiff she would have to return to the cashier position if she wished to remain with defendant. She reluctantly agreed to do so, at a rate of pay of $2.65 per hour. In February, 1977 she was told by Mr. King that her working hours were reduced to fourteen per week. Thereafter, she had a disagreement with Mr. King, and she left defendant's employ on February 9, 1977.

Plaintiff introduced into the record the following portions of the deposition of Mr. Colabella, the President of defendant:

Q. Now, what are the requirements of assistant manager?

A. I would say the same qualifications as manager.

Q. So, are you saying an assistant manager has to have had some management experience?

A. Yes.

Q. Prior to being hired as assistant manager?

A. Right.

Q. How does that work for someone already in your stores, an employee in one of your stores, and didn't have a position as assistant manager or manager and applying now for assistant manager's position. What do you require in terms of management experience and where do you expect them to apply?

A. We expect them to have some—are you talking about assistant manager?

Q. Assistant, someone who is an employee in your store already, and has not had assistant manager or manager position.

A. What do we require of that person? Well, actually all we require is past performance. If he worked in our store for a month and showed extreme ability to manage and to take care of the store, we would bring him up to assistant manager.

\*　　\*　　\*　　\*　　\*　　\*

Q. Were there any women besides Miss Helbling who applied from other positions in the stores, who applied for position of assistant manager or manager?

A. No, no one has ever applied.

Q. Have you ever had any women assistant manager trainees or manager trainees?

A. No.

Q. Have any women ever expressed interest of that to you?

A. Not at all, because of the nature of the business, the nature of the job; there was no one ever—everyone that worked in the store knew what type of a job it was; they knew they weren't qualified for it.

Q. What do you mean by not qualified?

A. They knew that they would have to unload trucks, carry heavy furniture; the responsibility is great as a manager, and I don't think anyone has had that experience that worked for us at that time, that could fit that bill.

The sole witness for the defense was Mr. Colabella. He testified that he has been President of Unclaimed Salvage and Freight since 1972, when he founded the company. It was his testimony that he never received an application from Florence Helbling for the position of manager of the Levittown store, nor did she tell him of her interest in the position.

He testified that he approved the hiring of Ray King as manager upon Howard Feuerbach's recommendation. Mr. Colabella did not interview anyone else for the job. He testified that it was his policy to hire the best person for a managerial job, based on their retail and/or management experience. He testified that he never personally said that he did not want women managers. He also testified that plaintiff's position as assistant manager was terminated because declining sales levels after the Christmas rush did not justify retaining the assistant manager position. Because Ray King considered plaintiff's attitude to be poor, Mr. Colabella told him he had authority to dismiss her.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), the United States Supreme Court set out the test to be applied in non-class action discrimination cases:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. . . .
>
> The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. . . .
>
> [If this is done, then the plaintiff must] be afforded a fair opportunity to show that [the defendant's] stated reason for his rejection was in fact pretext. Especially relevant to such a showing would be evidence that employees involved in acts against the employer of comparable seriousness . . . were nevertheless retained. . . .
>
> Other evidence that may be relevant to any showing of pretext includes facts as to the petitioner's treatment of respondent during his prior term of employment; petitioner's reaction, if any, to respondent's legitimate . . . activities; and petitioner's general policy and practice with respect to minority employment. On the latter point, statistics as to petitioner's employment policy and prac-

tice may be helpful to a determination of whether petitioner's refusal to rehire respondent in this case conformed to a general pattern of discrimination against blacks.

While this case speaks in terms of racial discrimination, the test is equally applicable to sex discrimination cases. *Jacobs v. Martin Sweets Co.*, 550 F.2d 364 (6th Cir.), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2180, 52 L.Ed.2d 227 (1977). Although the test is described in three phases, the Third Circuit has clearly stated that this does not indicate a shifting burden of proof:

> Under *McDonnell Douglas*, a title VII case is divided into three phases. First the plaintiff must demonstrate a *prima facie* case of discrimination. Then the defendant is called upon to articulate a legitimate non-discriminatory reason for its action. Finally, the plaintiff is afforded an opportunity to show that the proffered reason is in fact a pretext designed to cover what is actually an illegal discrimination.

> This tripartite arrangement is a useful tool in analyzing these cases, but it should not be construed so as to divide a single cause of action into three different cases. Thus there are no hard and fast rules as to what evidence must be considered as constituting a *prima facie* case and what evidence is needed in order to establish a pretext. Most importantly, the ultimate burden of persuading the fact-finder that there has been illegal discrimination resides always with the plaintiff.

*Whack v. Peabody and Wind*, 595 F.2d 190, at 193 (3d Cir. 1979) (footnotes omitted). *See also Kunda v. Muhlenberg College*, 621 F.2d 532 (3d Cir. 1980).

■ On the basis of the evidence presented at trial, we find that plaintiff carried her burden of proving by a preponderance of the evidence that defendant's exclusion of plaintiff from consideration for promotion to the position of store manager constituted unlawful discrimination on the basis of sex.

Plaintiff clearly made out a prima facie case. As a woman, she is protected by Title VII. She was qualified for the manager's position, according to defendant's standards. Defendant considered qualifications for manager and assistant manager to be the same; in promoting her to assistant manager, defendant agreed that plaintiff had such qualifications. Moreover, plaintiff had prior retail experience, and performed managerial duties in the Levittown store, both under Michael Smith and immediately after his departure. Plaintiff was rejected for the manager's job, and defendant kept the position open until Ray King, a man, was hired.

Plaintiff demonstrated by a preponderance of the evidence that defendant refused to consider her for promotion to store manager because of its policy not to consider women for managerial positions. This policy was demonstrated both through supervisor Howard Feuerbach's statement to plaintiff that women were not considered for managerial positions, and through President Joseph Colabella's statement that women are unqualified for manager's positions because they are incapable of heavy lifting.

■ Howard Feuerbach, the managerial employee to whom defendant delegated major hiring responsibility, told plaintiff she could not be store manager because it was company policy not to hire women as managers. The defendant placed no evidence in this record contradicting the testimony of the plaintiff and Sherry Leonard that Mr. Feuerbach made this statement. Defendant cannot evade liability for Mr. Feuerbach's actions. Mr. Feuerbach was acting for the company, with Mr. Colabella's express authority, to select a managerial candidate for Mr. Colabella's ultimate approval. The defendant company is thus liable for Mr. Feuerbach's actions as a supervisor, which actions excluded plaintiff from consideration as manager because she was a woman. Employers are liable under Title VII for the actions of supervisory employees. *Ostapowicz v. Johnson Bronze Co.*, 369 F.Supp. 522, 537 (W.D.Pa.1973), *modified*, 541 F.2d 394 (3d Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753

(1977). The Second Circuit, in a case strikingly similar to this, found the defendant company liable under Title VII for the actions of a supervisory employee who had authority to recommend employees for promotion. The supervisory employee refused to consider a woman employee for a promotion in which she expressed interest, telling her that the position "wasn't suitable for a woman." *Gillin v. Federal Paper Board Co.*, 479 F.2d 97 (2d Cir. 1973); *see also Saracini v. Missouri Pac. R. Co.*, 431 F.Supp. 389 (E.D.Ark.1977).

■ Furthermore, the Court finds that the plaintiff established that the company president operated on the assumption that all women are unqualified for store manager positions because the jobs require heavy lifting. For job requirements as to lifting strength, etc. to pass muster under Title VII, they must be reasonably necessary to job performance, and be applied equally to both sexes. *Batyko v. Pennsylvania Liquor Control Board*, 450 F.Supp. 32 (W.D.Pa. 1978). Defendant assumed that only women were incapable of the lifting required by the job, offering no objective basis for such assumption. As the Fifth Circuit stated in *Pond v. Braniff Airways, Inc.*, 500 F.2d 161, 166 (5th Cir. 1974):

> Where the only basis in a record for finding that a male employee-applicant was more qualified than a female are factors directly relatable to sex—the attributed capacity of a male to lift bigger and better boxes—then we are not at all certain that a fact finding of non-discrimination can stand when no objective tests were given either applicant to determine their physical abilities to perform the job in question.

Plaintiff's unrefuted evidence established that she and other women employees were capable of performing, and did perform, all necessary unloading and lifting required in the store.

Defendant failed to articulate any legitimate, non-discriminatory reason, as required by *McDonnell-Douglas, supra,* for refusing to promote plaintiff to manager of the Levittown store after Michael Smith left.

The arguments defendant advanced at trial fall of their own weight. The fact that Mr. Colabella may have employed a woman manager in another business he owned is irrelevant to the policy and practice of the defendant, Unclaimed Salvage and Freight Co., Inc. Mr. Colabella's testimony that he never received an application from plaintiff for the manager's position does not relieve defendant of liability. It was plaintiff's unrefuted testimony that Mr. Feuerbach told her that a formal application was unnecessary.

■ Although it appeared that the defendant contended that Ray King was hired because his qualifications were better than the plaintiff's, defendant offered little or no evidence to support such contention. Plaintiff, however, introduced Mr. King's application in evidence, and while the application shows that he had some supervisory experience, it does not reveal any retail experience. The Court, in examining the applications of both plaintiff and Mr. King, finds no basis for concluding that Mr. King's qualifications for the job as manager of the Levittown store were superior to plaintiff's. It was not plaintiff's burden, however, to prove that her qualifications were superior to those of the person selected. She must only demonstrate, as we have pointed out, above, that she was qualified for the position. Even when a promotion is awarded to a man with clearly superior qualifications, the employer may, nevertheless, be liable for discrimination if the woman is totally excluded from consideration on the basis of her sex. *Gillin, supra*; 479 F.2d at 102.

Finally, defendant appears to suggest that plaintiff's disagreements with the new manager, Mr. King, demonstrate that she was unqualified to be a store manager. These disagreements obviously arose after plaintiff was denied consideration for the position of manager and defendant cannot justify the decision to exclude the plaintiff from consideration on the basis of her incompatibility with the manager selected later.

Having found in favor of plaintiff on the issue of liability, the Court proceeded to receive evidence as to the appropriate remedy. Plaintiff seeks an award of back pay and "liquidated damages"; she does not request reinstatement to the position of store manager. For the reasons hereinafter set forth, the Court will enter judgment for plaintiff in the amount of $23,251.25.

■ The remedial provisions of Title VII empower the Court to exercise its equitable discretion to fashion the most complete relief possible "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Franks v. Bowman Transportation Co., Inc.*, 424 U.S. 747, 763, 96 S.Ct. 1251, 1264, 47 L.Ed.2d 444 (1976), *quoting Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). In Title VII cases, where discrimination has been found, ". . . [t]he injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." *Albemarle Paper, supra*, 422 U.S. at 418–19, 95 S.Ct. at 2372. There is some disagreement as to whether Title VII provides for legal, as well as equitable, remedies. *See Richerson v. Jones*, 551 F.2d 918, 926–27 n. 13 (3d Cir. 1977); *Rosen v. Public Service Electric and Gas Co.*, 477 F.2d 90, 96 (3d Cir. 1973); *Ahmad v. Independent Order of Foresters*, 81 F.R.D. 722, 729–30 (E.D.Pa.1979); *Presseisen v. Swarthmore College*, 71 F.R.D. 34 (E.D.Pa.1976). Here, however, while plaintiff's complaint prayed for "liquidated damages", evidence was presented only as to back pay. Back pay is, therefore, the only remedy this Court considered.

■ As pointed out, above, plaintiff does not seek reinstatement to a managerial position. Since defendant's Levittown store is now closed, the position denied to plaintiff is no longer available to her. In such a case, back pay alone is an appropriate remedy. *See Meadows v. Ford Motor Co.*, 9 F.E.P.Cas. 181 (6th Cir. 1975); *McLaughlin v. Mercury Freight Lines, Inc.*, 5 F.E.P.Cas. 769 (S.D.Ala.1972); *Utley v. Marks*, 4 F.E.P.Cas. 635 (S.D.Ga.1972).

■ The Court finds that a back pay award based on the salary of the manager of defendant's Levittown store will make plaintiff "whole" and place her in the position she would have occupied "if the wrong had not been committed." From the date Ray King was hired to the date the Levittown store closed (a period of 176 weeks), the store managers earned a total of $40,-779.09. Defendant never expressly argued that a back pay award, if any, should terminate on the date plaintiff left defendant's employ. If defendant's evidence concerning the justification for plaintiff's termination can be interpreted as embodying such an argument, we reject it. Plaintiff left defendant's employ as a result of disagreements with the man who was hired for the position she was discriminatorily denied. The back pay award, therefore must be based on the period running from the date she should have been promoted to manager to the date the store closed—the period it can be assumed she would have held the job to which she was entitled.

■ Title VII further provides, however, that "Interim earnings or amounts earnable with reasonable diligence by the person . . . discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e-5(g). The Court will therefore reduce the back pay award by $2,831.25, the amount plaintiff earned in defendant's employ from the date Ray King was hired until she left (a period of 14 weeks). The award will be further reduced by $1,816.59, the amount plaintiff earned for 26 weeks in the only other job she held during the relevant period. Unemployment compensation received by the plaintiff is also a permissible reduction. *Bowe v. Colgate-Palmolive*, 416 F.2d 711, 721 (7th Cir. 1969); *EEOC v. Kallir, Philips, Ross, Inc.*, 420 F.Supp. 919 (S.D.N.Y.1976), *aff'd* 559 F.2d 1203 (2d Cir.), *cert. denied*, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977); *Ruckel v. Essex International, Inc.*, 14 F.E.P.Cas. 403 (N.D.Ind. 1976). Accordingly, back pay will be reduced by the $3,640.00 plaintiff received in unemployment compensation ($70 per week

964

for 52 weeks). Finally, it is also permissible for the Court to reduce the award by "amounts earnable with reasonable diligence." A person who is "sincere about obtaining employment" can be expected to check want ads, register with employment agencies, and discuss potential opportunities with friends and acquaintances. *Sprogis v. United Air Lines*, 517 F.2d 387, 392 (7th Cir. 1975); *see also Masco v. United Airlines*, 13 F.E.P.Cas. 1549 (W.D.Pa.1976). "Reasonable diligence" requires the plaintiff to seek employment similar to her previous experience. *Williams v. Albemarle City Board of Education*, 508 F.2d 1242 (4th Cir. .1974). Plaintiff testified that her only means of seeking employment was answering newspaper ads, and that the only positions she considered were retail management positions. We do not consider this to be an exercise of "reasonable diligence", since plaintiff's previous management experience was slight. She cannot justify a decision to seek only management jobs on the ground that, but for defendant's discrimination, she would have had significant retail management experience. "Reasonable diligence" would require her to accept positions for which she had actual experience, i. e. sales jobs at the minimum wage level. Accordingly, we will reduce the back pay award by $9,240.00, the amount plaintiff could have earned working full-time at minimum wage for the remaining 84 weeks of the 176 week period. Thus, total reductions amount to $17,527.84; deducting this sum from $40,-779.09, the total back pay award to which plaintiff is entitled is $23,251.25.

An appropriate Order will be entered in accordance with this Memorandum, which is in lieu of findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).