Myron P. **NOBLER**, Plaintiff,

v.

**BETH ISRAEL MEDICAL CENTER**, Defendant.

No. 87 Civ. 0569 (RWS).

United States District Court, S.D. New York.

June 13, 1989.

Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for plaintiff; Judith P. Vladeck and Ruth E. Harlow, of counsel.

Proskauer Rose Goetz & Mendelsohn, New York City, for defendant; Allen I. Fagin, Bernard M. Plum and Steven P. Seltzer, of counsel.

SWEET, District Judge.

Defendant Beth Israel Medical Center ("BIMC") has moved pursuant to Fed.R. Civ.P. 56 for partial summary judgment to dismiss the claims of plaintiff Myron P. Nobler ("Nobler") for damages. For the reasons set forth below, the motion is denied.

*Prior Proceedings and Facts*

In this court's opinion dated December 20, 1988, *Nobler v. Beth Israel Medical Center,* 702 F.Supp. 1023 (S.D.N.Y.1988) (the "December Opinion"), BIMC's motion for summary judgment was granted as to Nobler's constructive discharge claim and denied as to the discrimination claim. Familiarity with the December Opinion is assumed.

As the December Opinion noted, Nobler was told in December 1985 that he was not among the top three candidates for the position as Director of Radiation Therapy, and in April 1986, the appointment of Bhadrasian Vikram ("Vikram") as Director became official. Nobler resigned from BIMC on August 1, 1986 and took a position as Associate Director of Radiation Therapy at Albert Einstein Medical Center ("Albert Einstein") in Philadelphia. Vikram began his employment at BIMC more than one month later, in September, 1986. Nobler did not suffer a decrease in salary during the period from April to August 1986, and even got a raise. *See Nobler,* 702 F.Supp. at 1027.

*Damages under ADEA*

The standards governing damages in a case brought under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA") are the same as those for a Title VII case. *See, e.g., Pena v. Brattleboro Retreat,* 702 F.2d 322, 325 (2d Cir.1983) (citing *Bourque v. Powell Electrical Mfg. Co.,* 617 F.2d 61 (5th Cir.1980)).[1]

Two policies underlie an award of damages in a case alleging discrimination in promotion. First, the employee who has been unlawfully discriminated against by his or her employer unlawfully should be made whole. *See, e.g., Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975) ("given a finding of unlawful discrimination, back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination"); *Equal Employment Opportunity Commission v. Enterprise Ass'n Steamfitters Local No. 638,* 542 F.2d 579, 583 n. 2 (2d Cir.1976), *cert. denied,* 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977). Second, the employee should remain on the job and attack the alleged discrimination from within the context of the employment relationship in order to give the employer an opportunity to ameliorate the effects of the discrimination. *See, e.g., Bourque v. Powell Electrical Mfg. Co.,* 617 F.2d 61, 66 (5th Cir.1980) ("society and the policies underlying Title VII will be best served if, wherever possible, unlawful discrimination is attacked within the context of existing employment relationships"); *Thorne v. El Segundo,* 802 F.2d 1131, 1134 (9th Cir.1986) ("[t]he purposes of Title VII are best served when parties, *where possible,* attack discrimination within the context of their existing employment relationships"). These policies appear to lead to conflicting results in this case, where Nobler was denied a promotion allegedly in violation of the ADEA, and voluntarily resigned from BIMC before the new position of Director of Radiation Therapy was actually established.

*Back pay*

■ The purpose of back pay is to empower the court to fashion relief "to make persons whole for injuries suffered an account of unlawful employment discrimina-

---

**1.** Moreover, ADEA authorizes district courts to grant claimants:

such legal or equitable relief as may be appropriate to effectuate the purposes of [the ADEA], including without limitation judg-

ments compelling employment, reinstatement or promotion, or enforcing the liability for amounts [resulting from a violation of the ADEA].

29 U.S.C. § 626(b).

tion." *Franks v. Bowman Transp. Co., Inc.,* 424 U.S. 747, 763, 96 S.Ct. 1251, 1264, 47 L.Ed.2d 444 (1976) (quoting *Albemarle,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975)). This "make whole" goal is not absolute in every case, however, and BIMC cites several cases from other circuits for the proposition that when a plaintiff was not constructively discharged, but instead resigned from a job voluntarily, he or she cannot receive back pay even if the discrimination claim is ultimately successful.[2] *See, e.g., Bourque v. Powell Electrical Mfg. Co.,* 617 F.2d at 66 n. 8 (5th Cir.1980) (remedy for the pay inequity to female buyer doing substantially similar work as male buyers for a lower salary was limited to the salary differential *up until* the date of the plaintiffs voluntary resignation); *Satterwhite v. Smith,* 744 F.2d 1380, 1381 n. 1 (9th Cir.1984) (unless temporary sweeper who was not promoted to permanent sweeper crew allegedly on grounds of race was constructively discharged, he cannot secure back pay) (citing *Muller v. United States Steel Corp.,* 509 F.2d 923, 930 (10th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975)); *Derr v. Gulf Oil,* 796 F.2d 340, 342 (10th Cir.1986) (back pay and reinstatement are not available to woman demoted from position as associate lease analyst to accounting clerk unless she was constructively discharged). The purpose of denying back pay in cases where discrimination occurs but does not rise to the level of constructive discharge is to encourage employees to stay at the place of employment in order to give employers a chance to remedy the discrimination. BIMC argues that application of these cases means that Nobler, who resigned voluntarily from his position at BIMC before the new position of Director

of Radiation Therapy was established, is barred from receiving damages.

In contrast to many of the cases cited by BIMC, the position which Nobler was allegedly discriminatorily denied—Director of Radiation Therapy at BIMC—was unique. Once Vikram was appointed as Director, there was no purpose to be served by Nobler staying at BIMC to try to work out the dispute within the context of the employment relationship, for amelioration was unavailable.[3] Because there was no possibility of promotion to an equivalent position, the harm to Nobler was irremediable. The Court of Appeals for the Ninth Circuit has explained:

> An employee, faced with an obstacle in the logical progression and development of a career should not quit at the first sign of institutional discrimination. Restricting back pay awards encourages the employee to work with supervisors within the existing job setting the employment relationship in an effort to overcome resistance within that workplace and to eradicate the discrimination.
>
> *But where, as here, an employee has no such opportunity, then these incentives have no relevance and back pay restrictions are inapplicable.*

*Thorne,* 802 F.2d at 1134 (emphasis added). Therefore, the policy of encouraging solutions within the context of the working relationship makes sense only when a possible solution exists. Given the uniqueness of the position sought by Nobler, there was no possible solution after Nobler was passed over.[4]

Therefore, the remedy of back pay may be available to Nobler if he is able to sustain his discrimination claim, especially given the fact that Nobler left as a result

---

**2.** The Second Circuit has not taken a position on this issue.

**3.** BIMC argues that it is not clear that amelioration was impossible, for BIMC could have offered Nobler a position as Associate Director or paid him as much as Vikram was earning. However, several months went by during which BIMC never offered such perquisites to Nobler, nor suggested that any would be made in the future.

**4.** Moreover, courts in other circuits have awarded backpay beyond the date of voluntary resignation where there was a failure to promote. *See, e.g., Harrison v. Dole,* 643 F.Supp. 794, 796–97 (D.D.C.1986) (Oberdorfer, J.) ("[defendant's] contention that back pay may not be recovered by [plaintiff] for any period after her voluntary resignation ... is supported neither by the cases cited in its brief, nor by reason"); *Helbling v. Unclaimed Salvage and Freight Co., Inc.,* 489 F.Supp. 956 (E.D.Pa.1980).

of the alleged discrimination, and not for some non-related reason (although the resignation did not amount to a constructive discharge). Such a result recognizes the goal of making a victim of discrimination whole, without inhibiting the goal of encouraging solutions to discrimination within the context of the employment relationship.

As one court has said:

"[i]n tailoring a Title VII remedy a court 'has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.'" [*Ford Motor Co. v. EEOC*, 458 U.S. 219, 233 n. 20, 102 S.Ct. 3057, 3066 n. 20, 73 L.Ed.2d 721 (1982) (quoting *Albemarle*, 422 U.S. at 418, 95 S.Ct. at 2372) ].... Failure to grant [plaintiff] back pay for the period after she left [defendant] conflicts with both parts of this duty—it neither compensates [plaintiff] for her injury, nor deters [defendant] from its discrimination."

*Harrison v. Dole*, 643 F.Supp. 794, 796–97 (D.D.C.1986) (Oberdorfer, J). Thus, if Nobler is able to prove his claim of unlawful age discrimination in the selection of Vikram as Director of the Radiation Department, back pay from the time Vikram arrived at BIMC to the date of judgment may be available. Back pay would be equal to the lesser of the difference between Vikram's salary and Nobler's salary at Albert Einstein, or Vikram's salary and what Nobler would have earned if he had stayed at BIMC. Such a measure protects BIMC from the fact that Nobler voluntarily resigned from BIMC to pursue employment at Albert Einstein, lest it be determined that he would have earned more if he had stayed at BIMC.

*Front pay*

 In *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir.1984), the Court of Appeals for the Second Circuit held that courts can award front pay to victims of age discrimination, and set forth three prerequisites for front pay. First, an award of front pay "presupposes" "that reinstatement is either impossible or impracticable." *Bonura v. Chase Manhattan Bank, N.A.*, 629 F.Supp. 353, 362 n. 3 (S.D.N.Y.1986), (citing *Whittlesey*). Second, front-pay is permissible "where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment." *Whittlesey*, 742 F.2d at 729. Third, "front pay may properly be awarded where calculation of both the plaintiff's likely mitigated earnings and the income the plaintiff likely would have earned if he or she had continued in the defendant's employ do not involve "'undue speculation.'" *Bonura*, 629 F.Supp. at 362, n. 3 (quoting *Whittlesey* at 729).

Because the position sought by Nobler has already been filled by Vikram, reinstatement of Nobler to the position is not available as a remedy for the future. *See, e.g., Whittlesey*, 742 F.2d at 728; *McNeil v. Economics Laboratory, Inc.*, 800 F.2d 111, 118 (7th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). Therefore, Nobler meets the first requirement for front pay.

As for whether Nobler has a reasonable prospect of comparable employment, whether or not his position as the Associate Director of Radiation Therapy at Albert Einstein is comparable is an issue for the future. Among the factors to be considered is Nobler's salary at Albert Einstein, including benefits, compared to what his salary at BIMC would have been as Director of Radiation Therapy. *See Buckley v. Reynolds Metals Co.*, 690 F.Supp. 211, 215 (S.D.N.Y.1988).

Finally, as for the issue of how speculative a determination of front pay would be, this case would involve more speculation than *Whittlesey*, given the fact that Nobler is younger than plaintiff in that case. However, speculation of salary would not be impossible here, where Nobler is in a profession which provides "relatively stable and dependabler employment." *Buckley*, 690 F.Supp. at 216. Further, as the Honorable Edward Weinfeld stated, "[t]he mere fact that damages may be difficult of computation should not exonerate a wrongdoer

from liability." *Koyen v. Consolidated Edison Co.,* 560 F.Supp. 1161, 1169 (S.D.N. Y.1983).

Therefore, if Nobler is able to prove that BIMC unlawfully discriminated against him on the basis of age and if he meets the requirements of *Whittlesey, supra,* front pay may be available to him.

*Conclusion*

If Nobler proves his discrimination claim, he may be entitled to back pay and front pay although he was not constructively discharged. To hold otherwise would, in the context of this case, contradict the goal of making a plaintiff, who had no hope of ameliorating his situation with his employer, whole. Therefore, BIMC's motion for partial summary judgment is denied.

It is so ordered.