Vincent **TOWNSEND**, Plaintiff,

v.

**EXCHANGE INSURANCE COMPANY; Selective Insurance Company of America; and Selective Insurance Group, Inc.,** Defendants.

No. 97–CV–0866C(SC).

United States District Court, W.D. New York.

Feb. 24, 2003.

McGrath & Polvino, PLLC (Donald G. McGrath, Esq., and Andrea R. Polvino, Esq., of Counsel), Williamsville, NY, for Plaintiff.

Brown Raysman Millstein Felder & Steiner LLP (Joel L. Finger, Esq., of Counsel), New York City, for Defendants.

## INTRODUCTION

CURTIN, District Judge.

Plaintiff has moved to reargue this court's decision of February 14, 2002, Item 83, and defendants Exchange Insurance Company, Selective Insurance Company of America, and Selective Insurance Group, Inc. (collectively "defendants" or "Selective") have moved for summary judgment dismissing the remainder of plaintiff's complaint. Item 106.

## FACTS

In 1964, Vincent Townsend began his career in the insurance industry. Item 60, Ex. 3, ¶ 13. After holding a number of positions with different insurance companies, mainly in Central and Western New York, he was hired by Exchange Insurance Company in April 1987 as Agri Business Manager. *Id.,* ¶ 18. He was promoted to Senior Marketing Representative, and was later made Team Leader of the Lower Hudson Valley and Western New York Commercial Underwriting Teams. *Id.* In 1992, Exchange was acquired by Selective Insurance Company, and Townsend became employed by Selective. *Id.,* ¶ 21. In 1996, the Buffalo office of Selective was restructured, and the number of Underwriting Team Leader positions was reduced from three to two. Item 60, Ex. 1, pp. 1, 2. The employees were told to reapply for the positions they desired. Item 60, Ex. 11, p. 14. Townsend, who was 53 years old at the time, applied for one of the Team Leader positions and for two of the AMS positions. *Id.,* p. 2. He was interviewed for those positions in July 1996. *Id.,* pp. 291–92. Townsend became ill during the second week of August 1996, and underwent heart surgery that same month. *Id.,* p. 307. He was out of work on paid disability leave until he returned to work on December 23, 1996. *Id.,* p. 308.

In September 1996, the Team Leader positions were filled by Anthony Morano ( age 61) and Arlene Callahan (age 46). Item 61, ¶ 8. The AMS positions were filled by Karen Ryan (age 40) and Tim Anderson (age 34). Item 108, ¶ 3. In October 1996, Mr. Morano was removed as Team Leader, and on December 5, 1996, he was replaced by James Chavanne (age 35). Item 61, ¶¶ 9, 10.

Upon returning from disability leave on December 23, 1996, Townsend was reas-

signed to a Commercial Underwriter position with the same salary and benefits he had received in his former position as Team Leader. Item 60, Ex. 11, p. 334.

On January 3, 1997, Townsend told his supervisors that he wished to resign. He asked whether Selective would provide him with the displacement package that employees displaced in the restructuring had received. *Id.*, p. 322. He submitted a letter of resignation on that date. On January 20, 1997, Townsend signed a separation agreement containing the terms of his displacement package. Townsend would receive twenty weeks of severance pay, and his last day of work would be March 29, 1997. *Id.*, p. 329. Selective provided Townsend with an additional week of pay, without his having to work, to make his separation effective April 6, 1997. This would insure his eligibility for a pension. *Id.*, p. 330.

On June 19, 1997, Townsend swore to a charge, submitted to the Equal Employment Opportunity Commission ("EEOC"). Item 60, Ex. 9. He asserted: "On or about September 1, 1996, I was effectively terminated from my position as Team Leader because of my age, in violation of the Age Discrimination In Employment Act and the New York State Executive Law." *Id.*, pp. 1–2. Following its investigation, the EEOC found no reasonable cause that the Age Discrimination in Employment Act ("ADEA") had been violated. Item 60, Ex. 10.

Plaintiff commenced this action on November 3, 1997. In his complaint, he alleged that in September 1986 he was demoted, constructively discharged, and replaced because of age discrimination while on disability leave. Item 1, ¶ 18. He claimed he was replaced as a Team Leader by a "younger, less experienced employee and was denied alternative employment positions solely because of his age." *Id.*, ¶ 20. In his response to Defendants' First Set of Interrogatories, plaintiff identified only Arlene Callahan as that younger, less experienced employee. Item 60, Ex. 6, pp. 5–6.

Defendants filed a motion for summary judgment in April 1999 seeking to dismiss the complaint. Item 14. In a Report and Recommendation filed March 29, 2000, United States Magistrate Judge Hugh B. Scott recommended the dismissal of plaintiff's constructive discharge, compelled self-defamation, and ERISA claims, but denied the motion with respect to the ADEA and the New York State Human Rights Law ("HRL") claims. Item 26. The Magistrate Judge noted that plaintiff was apparently not considered as a replacement for Morano in the Team Leader position. Item 26, pp. 7–8. This finding suggested that the Magistrate Judge considered that the demotion of Mr. Morano and his replacement by Mr. Chavanne may have been part of plaintiff's age discrimination claim.

On May 17, 2001, this court affirmed the findings in the Report and Recommendation. Item 37. At the court's request, plaintiff clarified that it was his position that the appointment of James Chavanne "was an act of age discrimination." Item 42.

In a motion filed November 9, 2001 (Item 58), defendants sought partial summary judgment and dismissal of plaintiff's claims for back pay, front pay, and punitive damages under the ADEA and the HRL, as well as dismissal of compensatory damages claims under the ADEA. Additionally, defendants sought dismissal of any age discrimination claim based on the hiring of James Chavanne as a Team Leader. In an order filed February 14, 2002, this court granted the motion dismissing the discrimination claim based on the hiring of Chavanne, the punitive dam-

ages claims under the ADEA and the HRL, and emotional pain and suffering claims under the ADEA. Item 83. The court stated that plaintiff has no claim for back pay for the periods of August 1996 to December 23, 1996, while he was out on disability, and from December 23, 1996, when he returned to work, until April 6, 1997, his last day on the Selective payroll.[1] The court did not dismiss plaintiff's claim for back pay from April 7, 1997 onward.

Based on the court's order, defendants asked the court's permission to file an additional motion for summary judgment, while plaintiff asked to reargue the defendants' second motion for summary judgment. In an order filed May 14, 2002, the court allowed plaintiff to reargue the previous motion and granted the defendants' application to file a further motion for summary judgment on or before June 21, 2002. In its order, the court stated that "[i]f, upon receipt of the motion, plaintiff determines that further discovery is required before a response can be filed, discovery shall be undertaken forthwith and shall be completed on or before August 30, 2002." Item 97.

Plaintiff filed the motion to reargue on June 20, 2002, Item 104, and defendants filed this motion for summary judgment on June 21, 2002. Item 106. In support of the motion for summary judgment, defendants submitted an affidavit of Debra P. Carter, Vice President and Director of Human Resources for Selective. Item 108. Ms. Carter stated that selection for the Team Leader and AMS positions occurred in late July 1996. *Id.*, ¶ 2. The AMS positions were filled by Karen Ryan (age 40) and Tim Anderson (age 34) in September 1996. *Id.*, ¶ 3.

Ms. Carter also discussed the Selective disability leave policy. If an employee was out of work on a disability leave, Selective would guarantee that the employee would be able to return to his former or a similar position after 12 weeks of disability. It was, however, the policy to work with employees to identify openings within the company for which they were qualified when they were able to return after longer periods of disability. *Id.*, ¶ 4. Ms. Carter further stated that had Townsend been selected for the AMS position in July 1996, the position would not have been held for him during his 16–week period of disability. That is because the AMS position was a "field" position, as opposed to an "office" position, in which other employees could assume the duties during the period of disability. Item 108, ¶ 5. Plaintiff was provided severance pay at his Team Leader rate of pay, and benefits through September 1997. *Id.*, ¶ 6. No Team Leader positions were available or filled at the Buffalo branch office between plaintiff's December 23, 1996 return to work and his last day of actual employment on March 29, 1997. *Id.*, ¶ 7. The Buffalo branch office was closed, and the Team Leader positions were eliminated in April 1997. *Id.*, ¶ 8.

In opposition to the motion, plaintiff filed both an affidavit, Item 115, and an attorney's affidavit, Item 116, on August 27, 2002. In his affidavit, plaintiff stated that he was unaware of any distinction between "office" and "field" positions and their application to the Selective disability leave policy. Item 115, ¶¶ 3–5. Plaintiff's attorney argued that the defendants' motion was duplicative of their first motion and should be denied. Alternatively, plaintiff requested further discovery regarding the disability leave policy and its application in order to defend against the motion. Item 116, ¶ 11.

---

1. Plaintiff collected twenty weeks of severance pay after April 6, 1997.

Defendants filed a reply memorandum in support of their motion on September 18, 2002. Item 123. Oral argument was heard on November 18, 2002. For the reasons that follow, the motion for reargument is denied, and the motion for summary judgment is granted in part and denied in part.

## DISCUSSION

### I. Plaintiff's Motion to Reargue

Plaintiff seeks to reargue this court's order of February 14, 2002. Specifically, plaintiff states that the order included "an inaccurate recitation of the facts" with regard to the claim based on the hiring of James Chavanne. Item 104, ¶ 5. Plaintiff also apparently argues that back pay should be available from the date of the alleged discriminatory action, July 30, 1996, Item 104, ¶ 15, and that reversal of summary judgment is appropriate because "defendants failed to reveal in discovery ... their reliance on Mr. Townsend's disability as a defense ...." *Id.*, ¶ 21.

The court may relieve a party from a judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misrepresentation; (4) void judgment; (5) satisfied or discharged judgment; or (6) any other reason justifying relief. Fed.R.Civ.P. 60(b). Here, plaintiff contends that "facts and legal arguments [were] overlooked by the Court" which would alter the result in the February 2002 order. *Id.*, ¶ 3.

■ First, plaintiff argues that the court erred in stating that the Chavanne claim was not mentioned in plaintiff's complaint. Accordingly, plaintiff seeks to reargue the court's conclusion that the claim was not reasonably related to the discrimination claim in the EEOC charge. The court has reviewed the complaint and

the affidavit of plaintiff's attorney in support of the motion for reargument, and concludes that plaintiff did not mention the Chavanne claim in his complaint. In his complaint, plaintiff alleged that he was replaced as a Team Leader by a younger, less experienced person (Item 1, ¶ 20). In his answers to interrogatories, that person was identified as Arlene Callahan (Item 104, Exhibit C). In his EEOC charge, plaintiff alleged that he was terminated from his position as a Team Leader in September 1996. The hiring of James Chavanne in December 1996 did not involve plaintiff and occurred while plaintiff was on disability leave. The EEOC charge was not filed until July 1997, and plaintiff, if it was his intent, could have raised the hiring of Chavanne in December 1996. The complaint failed to allege further incidents of discrimination carried out in precisely the same manner as alleged in the EEOC charge, and thus the claim based on the hiring of Chavanne was not reasonably related to the EEOC charge. *See Butts v. City of New York Dep't of Housing*, 990 F.2d 1397, 1402 (2d Cir. 1993); *Neratko v. Frank*, 31 F.Supp.2d 270, 279 (W.D.N.Y.1998).

■ Plaintiff, relying on *Nobler v. Beth Israel Medical Ctr.*, 715 F.Supp. 570 (S.D.N.Y.1989), apparently argues that he is entitled to back pay from the date of the alleged discriminatory act, July 30, 1996, the point at which the Team Leader appointments were made. This conclusion is not supported by the holding in *Nobler*. There, the court concluded that the plaintiff, who resigned prior to the time that the position he sought was filled, had a claim for back pay from the time the new candidate filled the position to the date of judgment, but reduced by the salary he earned in his new position. *Nobler, supra,* at 573. This is not inconsistent with the result in the order of February 14, 2002.

Item 83. Here, plaintiff is not entitled to back pay during the time he was on disability, and is not entitled to back pay up until his resignation, when he was earning the same salary that he would have earned had he been in the Team Leader position.

Finally, plaintiff argues that the grant of summary judgment should be reversed because defendants failed to reveal in discovery their reliance on plaintiff's disability as a defense to liability. This argument was not raised on the previous motion, and was not part of the February 14, 2002 order. Accordingly, on this point, there is nothing to reargue.[2]

## II. Defendants' Motion for Summary Judgment

### A. The Team Leader Position

■ Defendants argue that plaintiff's age discrimination claim must fail with respect to the Team Leader position. As the court has found that plaintiff may not base his claim on the hiring of James Chavanne, the claim is based only upon the hiring of Callahan and Morano. Previously, in his Report and Recommendation on defendant's first motion for summary judgment, Magistrate Judge Scott considered the argument that Morano (age 61) was older than Townsend, and Callahan (age 46) was too close in age to plaintiff (age 53) to permit an inference of age discrimination. Item 26, pp. 7–8, n. 7. An inference of age discrimination cannot be drawn from the replacement of one worker with another who is not "substantially younger." *O'Connor v. Consolidated Coin Caterers*

*Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); *see also Richter v. Hook–SupeRx, Inc.*, 142 F.3d 1024, 1029 (7th Cir.1998) (seven-year age difference not sufficient to create inference of age discrimination); *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 893 (7th Cir.1997) (age difference of less than ten years is presumptively insubstantial); *McKeever v. New York Medical College*, 1999 WL 179376 at *7 n. 8 (S.D.N.Y. Mar. 31, 1999) (citing *Richter, supra,* for principle that inference of discrimination not shown where 53–year–old employee replaced by 46–year–old employee).

Plaintiff does not vigorously argue against this prong of the motion, other than to assert that this motion is indistinguishable from defendants' first unsuccessful motion and should be denied outright.[3] This is not quite accurate, given the intervening order, Item 83, in which the court dismissed the ADEA and HRL claims with regard to the Chavanne hiring. As a result of this ruling, the court can certainly revisit the ADEA and HRL claims with respect to the Callahan and Morano hirings.

■ Plaintiff has the burden of establishing, by a preponderance of the evidence, a *prima facie* case of age discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In order to establish a *prima facie* case of age discrimination under the ADEA and HRL,[4] plaintiff must show that (1) he

---

2. To the extent that plaintiff raises this argument in opposition to the defendants' motion for summary judgment, further discovery has been foreclosed by this court's order of May 14, 2002. Item 97. At that time, plaintiff was instructed to undertake any additional discovery that would be necessary to respond to the motion "forthwith," and to complete all discovery by August 30, 2002. Item 97.

3. Plaintiff seems to concede that his claim with respect to the Team Leader position did not survive the court's order of February 2002. Item 104, ¶ 2.

4. An HRL claim is subject to the same analysis as an ADEA claim. *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.),

was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of age discrimination. *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir.), *cert. denied*, 530 U.S. 1261, 120 S.Ct. 2718, 147 L.Ed.2d 983 (2000). The replacement of plaintiff by an employee only seven years younger, without more, does not establish that the employment action occurred under circumstances giving rise to an inference of age discrimination. Accordingly, plaintiff has not established a *prima facie* case, and the defendants' motion should be granted with respect to the Team Leader position.

## B. The AMS Position

Defendants argue that plaintiff's claim with respect to the AMS position must also fail, because plaintiff was on disability leave when the positions were filled in September 1996, and he failed to apply for another AMS position when he returned to work in December 1996.[5] They argue that he has failed to make out a *prima facie* case of age discrimination as he was not available in September 1996, and thus not qualified, for the position. Additionally, defendants contend that according to the Selective disability policy, plaintiff's position could not be guaranteed for more than 12 weeks. Thus, even if plaintiff had been placed in the AMS position prior to his illness, the position would not have been available when he returned after 16 weeks of disability. Plaintiff was offered an underwriter position, at the same rate of pay as his previous position, in accordance with

*cert. denied*, 534 U.S. 993, 122 S.Ct. 460, 151 L.Ed.2d 378 (2001).

**5.** For this reason, the court in its February 2002 order found that plaintiff would not be

the disability policy. Accordingly, they argue that even if plaintiff could prove that he was discriminated against, he cannot prove that he was harmed by the alleged discrimination.

■ With regard to the AMS position, the court finds that plaintiff has established a *prima facie* case of age discrimination. In July 1996, at the time the hiring decisions were made, plaintiff was a member of the protected class, he was qualified for the AMS position, he was denied the position, and the positions were filled by persons substantially younger, giving rise to an inference of age discrimination. *See Carlton, supra; Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir.1994). Plaintiff's subsequent disability in August 1996 is not relevant to the adverse employment action taken one month before. Defendants can no more speculate that had plaintiff been given an AMS position, it would not have been held for him during his period of disability, than plaintiff can speculate that he would have returned after 12 weeks of disability.

■ Once the plaintiff has established the *prima facie* case, the burden then shifts to the employer to show a legitimate, non-discriminatory reason for the hiring decision. *Carlton, supra; Gallo, supra.* Here, defendants have not argued that the decision was based on a non-discriminatory reason, but simply assert that plaintiff was not available, and thus not qualified, as a result of his disability. Accordingly, defendants have not sustained their burden on the motion for summary judgment with respect to the AMS position.

entitled to back pay for the AMS position, as he did not apply for the opening upon his return from disability. Item 83, p. 17 n. 5.

The court previously found that plaintiff did not seek an AMS position when he returned from disability leave, and thus has no claim for back pay with regard to the AMS position. Item 83, p. 17, n. 5. Accordingly, the only damages available to plaintiff, should he prevail in proving discrimination with regard to the AMS position, would be compensatory damages, including pain and suffering, available under the HRL. Item 83, p. 9, n. 3.

Defendants argue that given plaintiff's lengthy period of disability, he suffered no damages as a result of being placed in an underwriter position upon his return to work. This argument is based on defendant's speculation that had plaintiff been given an AMS position, it would not have been held for him beyond a 12–week period of disability. As stated above, this speculation is improper. Plaintiff was not placed in the AMS position, and argumentation based on such a supposed or expected scenario is unhelpful. Plaintiff can just as easily argue that had he been given an AMS position, he would have returned from his disability leave within the 12–week period. The court, however, recognizes that plaintiff, upon his return to work, passed up an opportunity to apply for an available AMS position. While plaintiff may be able to prove emotional distress damages as a result of defendants' alleged age discrimination, those damages may be minimized by his decision to forego applying for the available AMS position and resign.

Finally, defendants argue that a plaintiff who cannot prove damages is not entitled to an award of attorney fees. *See Farrar v. Hobby*, 506 U.S. 103, 109, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (only "prevailing" parties entitled to award of attorney fees); *Pino v. Locascio*, 101 F.3d 235 (2d Cir. 1996) (plaintiff who recovers only nominal damages usually not entitled to an award of attorney fees). While this is true, the argument is premature. The defendants' motion with respect to the AMS position is denied.

## CONCLUSION

The plaintiff's motion to reargue the order of February 14, 2002 is denied. The defendant's motion for summary judgment is granted with respect to the Team Leader position, and denied with respect to the AMS position.

So ordered.