742 F.2d 724
 35 Fair Empl.Prac.Cas. 1089,
35 Empl. Prac. Dec. P 34,620,
5 Employee Benefits Ca 2002
John W. WHITTLESEY, Plaintiff-Appellee-Cross-Appellant,
v.
UNION CARBIDE CORP., Defendant-Appellant-Cross-Appellee.
 Nos. 1146, 1094, Dockets 84-7066, 84-7118.
 United States Court of Appeals,
Second Circuit.
 Argued May 14, 1984.
Decided Aug. 22, 1984.
 
 Judith P. Vladeck, New York City (Joseph J. Garcia, Anne C. Vladeck, Vladeck, Waldman, Elias & Englehard, P.C., New York City, of counsel), for plaintiff-appellee-cross-appellant.
 Eugene T. D'Ablemont, New York City (William A. Krohley, Kelley, Drye & Warren, New York City, of counsel), for defendant-appellant-cross-appellee.
 Justine S. Lisser, Atty. E.E.O.C., Washington, D.C. (David L. Slate, General Counsel, Philip B. Sklover, Associate General Counsel, Vincent Blackwood, Asst. General Counsel, Washington, D.C., of counsel), for E.E.O.C. as amicus curiae.
 Before CARDAMONE, and PRATT, Circuit Judges, and DUDLEY B. BONSAL of the United States District Court for the Southern District of New York, sitting by designation.
 GEORGE C. PRATT, Circuit Judge.
 
 
 1
 Defendant Union Carbide Corporation appeals from a judgment of the United States District Court for the Southern District of New York, Pierre Leval, Judge, determining that Union Carbide's compulsory retirement of plaintiff, John Whittlesey, violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 621 et seq. (1982), and that Whittlesey's position as chief labor counsel of Union Carbide was not a "bona fide executive or high policymaking position" shielded from full protection of the act. 29 U.S.C. Sec. 631(c)(1). Judge Leval awarded Whittlesey damages of $242,649.08, consisting of back pay plus prospective wages or "front pay" adjusted to reflect, among other things, Whittlesey's pension benefits and his potential earnings in mitigation of damages. Finding that Union Carbide did not "willfully" violate the ADEA, Judge Leval denied plaintiff's request for the liquidated damages that would have doubled his back pay award. 29 U.S.C. Sec. 626(b).
 
 
 2
 Union Carbide's major claims on the appeal are that, as its chief labor counsel, Whittlesey was exempt from ADEA coverage by 29 U.S.C. Sec. 631(c)(1), and that "front pay" is not permitted under the ADEA. On the cross-appeal Whittlesey challenges the court's finding that Union Carbide did not act "willfully".
 
 
 3
 We have carefully reviewed the arguments advanced by both sides and conclude that Judge Leval's analysis of the governing legal standards was correct and that his findings of fact were not clearly erroneous. We therefore affirm the judgment substantially for the reasons set forth in Judge Leval's opinion on liability, Whittlesey v. Union Carbide Corp., 567 F.Supp. 1320 (S.D.N.Y.1983), and in his supplemental opinions on damages. We write this opinion primarily to make clear, as a matter of precedent, our approval of "front pay" as a permissible remedy under the ADEA.
 
 
 4
 The central liability issue was whether Whittlesey was exempt from ADEA protection as a "bona fide executive or high policymaking employee" under 29 U.S.C. Sec. 631(c)(1). Judge Leval correctly rejected the argument that Whittlesey's high salary and title of chief labor counsel automatically removed him from coverage. After analyzing the statute, regulations, and case law, he determined that congress intended the test for the exemption to be "one of function, not of pay." 567 F.Supp. at 1326. From the evidence concerning Whittlesey's duties at Union Carbide, Judge Leval found that Whittlesey was not a "bona fide executive", but "was primarily an attorney doing legal work, giving legal advice, giving attention to the effect of statutes, regulations and administrative action upon company practices and attending to litigation." Id. at 1323. While Whittlesey had "some administrative or executive responsibility over the functioning of this small [labor law] section", his supervisory duties nevertheless "were quite minimal and occupied a very small portion of his time." Id.
 
 
 5
 Nor did Whittlesey lose his ADEA protection under the "high policymaking employee" prong of the exemption, for Judge Leval found that "Union Carbide did not encourage or invite its house lawyers to play a dynamic policy-creating role" and that "they were employed to do legal work". Id. at 1324. He further found that when Whittlesey did contribute to corporate policy, his "role in connection with policy formulation was minor" and did not rise to the exemption level contemplated by the statute and regulations. Id. at 1325. Since these findings by Judge Leval are amply supported by the record, we affirm his determination that Whittlesey was not exempt from ADEA protection by Sec. 631(c)(1).
 
 
 6
 Similarly, we agree with Judge Leval's conclusion that Union Carbide's violation was not "willful". There was excusable uncertainty over the coverage of the new amendment, passed in 1978, which exempted executive and high policymaking employees from the act's coverage.
 
 
 7
 Judge Leval addressed the complex damage issues in three separate opinions which weighed the evidence and arguments submitted in relation to back pay, front pay, lump sum payments, anticipated earnings, expected bonuses, stock options, pension credits, life insurance credits, social security benefits, pre-judgment interest, and the effects of inflation. The damages finally allowed came to $242,649.08. We find no error in the total amount, its various components, or the computations employed. We turn, then, to the issue of "front pay" under the ADEA, i.e., whether damages for loss of future earnings are available to a victim of age discrimination when reinstatement is not a suitable remedy for the defendant's discriminatory discharge.
 
 
 8
 Front pay as a remedy for an ADEA violation has never been directly passed on by this circuit. Three other circuits have expressly ruled on the availability of front pay under the ADEA; two allowed it and one denied it. In Cancellier v. Federated Dept. Stores, 672 F.2d 1312 (9th Cir.), cert. denied, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982), the ninth circuit expressly approved an award of front pay under the ADEA, but did not discuss its reasons for so holding. Id. at 1319. In Gibson v. Mohawk Rubber Co., 695 F.2d 1093 (8th Cir.1982), the eighth circuit also allowed front pay, stating that the "equitable relief that the district court may grant includes, inter alia, additional pension benefits, reinstatement, and monetary damages in lieu of reinstatement", and that the court should "assume, absent evidence to the contrary, that the illegally discharged employee would have continued working for the employer until he or she reached normal retirement age." Id. at 1100-01 & n. 8.
 
 
 9
 The only circuit holding to the contrary on this issue did so in a footnote, without explaining why front pay should be foreclosed. Kolb v. Goldring, Inc., 694 F.2d 869, 874-75 & n. 4 (1st Cir.1982) (citing Monroe v. Penn-Dixie Cement Corp., 335 F.Supp. 231, 235 (N.D.Ga.1971)). But see Loeb v. Textron, Inc., 600 F.2d 1003, 1022-23 (1st Cir.1979). The third and tenth circuits have each discussed the arguments for and against an award of front pay, but have not actually decided the issue of its availability. Wehr v. Burroughs Corp., 619 F.2d 276, 283 (3rd Cir.1980); Blim v. Western Electric Co., 731 F.2d 1473, 1479 (10th Cir.1984). We agree with the eighth and ninth circuits, and hold that front pay is an available remedy in appropriate cases brought under the ADEA.
 
 
 10
 While the enforcement provisions of the ADEA were generally modeled after the remedies in the Fair Labor Standards Act (FLSA), 29 U.S.C. Secs. 211(b), 216, and 217, which were incorporated by reference into the ADEA's Sec. 626(b), see Lorillard v. Pons, 434 U.S. 575, 577-78, 98 S.Ct. 866, 868-69, 55 L.Ed.2d 40 (1978), congress did more than merely incorporate that statute's back pay and limited injunctive remedies. It expressly authorized the district courts to grant an ADEA claimant
 
 
 11
 such legal or equitable relief as may be appropriate to effectuate the purposes of [the act], including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts [owing to a person as a result of the violation of the ADEA].
 
 
 12
 29 U.S.C. Sec. 626(b).
 
 
 13
 Guided by this broad grant of remedial authority, we have previously encouraged district judges in this circuit to fashion remedies designed to ensure that victims of age discrimination are made whole. Geller v. Markham, 635 F.2d 1027, 1036 (2d Cir.1980), cert. denied, 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981). We now hold specifically that this language permits a district court, in appropriate circumstances, to award front pay to victims of age discrimination.
 
 
 14
 In many cases involving unlawful compulsory retirement the plaintiff can be made whole through an award of back pay coupled with an order of reinstatement. See Blim v. Western Electric Co., 731 F.2d at 1478-79; see also Albemarle Paper Co. v. Moody, 422 U.S. 405, 416-22, 95 S.Ct. 2362, 2371-2374, 45 L.Ed.2d 280 (1975). These remedies, explicitly authorized by the statute, involve the least amount of uncertainty because, in effect, they reestablish the prior employment relationship between the parties and at the same time assure the plaintiff of employment free of discrimination based on age.
 
 
 15
 Reinstatement, however, may not always be possible. For example, there may be no position available for plaintiff at the time of judgment, see, e.g., Patterson v. American Tobacco Co., 535 F.2d 257, 268-69 (4th Cir.), cert. denied, 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976), or, as was the case here, the employer-employee relationship may have been irreparably damaged by animosity associated with the litigation, see, e.g., Hoffman v. Nissan Motor Corp. in U.S.A., 511 F.Supp. 352, 355 (D.N.H.1981).
 
 
 16
 Denial of reinstatement in those situations, without an award of reasonable, offsetting compensation, would leave the plaintiff irreparably harmed in the future by the employer's discriminatory discharge, and would permit the defendant's liability for its unlawful action to end at the time of judgment. To prevent this injustice a reasonable monetary award of front pay is necessary as "equitable relief * * * appropriate to effectuate the purposes of [the act]." 29 U.S.C. Sec. 626(b).
 
 
 17
 We are unpersuaded by the reasons advanced by those courts that have rejected front pay as a remedy under the ADEA. In Monroe v. Penn-Dixie, 335 F.Supp. 231, the trial court, after ruling that plaintiff could not state a cause of action under the ADEA, went on to state in dicta that an ADEA plaintiff could never recover damages in lieu of reinstatement because such damages were always too speculative. Id. at 235. While we agree that an award of future damages carries with it some risk of uncertainty and may, indeed, be speculative in some cases, we do not believe the risk to be so great as to preclude automatically front pay in every case. District courts have had considerable experience with damages for future wages in employment contract and personal injury cases, see Koyen v. Consolidated Edison Co. of New York, Inc., 560 F.Supp. 1161, 1167-69 (S.D.N.Y.1983), as well as front pay cases under Title VII, see, e.g., EEOC v. Kallir, Philips, Ross, Inc., 420 F.Supp. 919, 926-27 (S.D.N.Y.1976), aff'd, 559 F.2d 1203 (2d Cir.), cert. denied, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977). We are confident they can adapt that wisdom to the special needs of ADEA cases to determine reasonable compensation when reinstatement is inappropriate.
 
 
 18
 Some judges have also argued that a possible award of front pay would discourage settlement because the plaintiff might be inclined to hold out for the more attractive remedy of damages for front pay. See Ginsberg v. Burlington Industries, Inc., 500 F.Supp. 696, 701 (S.D.N.Y.1980). We think this institutional risk is balanced by defendants' increased inclination to compromise when faced with a possible liability for front pay. In any event, the argument is directed less at front pay as a possible remedy than at the policies underlying the ADEA itself. Moreover, an award of front pay in lieu of reinstatement does not contemplate that a plaintiff will sit idly by and be compensated for doing nothing, because the duty to mitigate damages by seeking employment elsewhere significantly limits the amount of front pay available. Koyen v. Consolidated Edison Co. of New York, Inc., 560 F.Supp. at 1168.
 
 
 19
 In the case at bar, Judge Leval correctly awarded front pay to Whittlesey in lieu of reinstatement because he found the animosity between Whittlesey and Union Carbide to be so intense that reinstatement was impossible. Based on ample evidence, he found that Union Carbide had exhibited "such hostility and outrage", 567 F.Supp. at 1330, against Whittlesey by reason of his bringing the ADEA suit that he would have difficulty functioning again in Union Carbide's law department; that Whittlesey would be "ostracized and excluded from the functions of giving counsel", id.; and that there was no justification for Union Carbide's hostile attitude and vengefulness.
 
 
 20
 Judge Leval was within his discretion in allowing front pay for the full period from trial until Whittlesey would reach age 70, when compulsory retirement could be imposed without violating the ADEA. The time period was relatively short, approximately four years, and thus did not involve some of the uncertainties which might surround a front pay award to a younger worker. Foit v. Suburban Bancorp., 549 F.Supp. 264, 267 (D.Md.1982).
 
 
 21
 In sum, we think that front pay is, in limited circumstances, an appropriate remedy under the ADEA. It serves a necessary role in making victims of discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment. Given the high level of Whittlesey's position at Union Carbide and the few years remaining before he will be outside the protection of the ADEA, the award of front pay in this case did not require undue speculation, either as to the possibility of mitigation, or as to the amount he would have made at Union Carbide had he not been fired. To have denied him compensation for the losses he would otherwise suffer during those years would have been inconsistent with the act's purposes. It would have been particularly inappropriate in a case like this one where the district court found the impossibility of reinstatement to be the fault of the employer.
 
 
 22
 The judgment appealed from is affirmed.