John W. SMITH, Appellee,

v.

SMITHWAY MOTOR XPRESS,
INC., Appellant.

No. 89–1357.

Supreme Court of Iowa.

Dec. 19, 1990.

Rehearing Denied Jan. 24, 1991.

M. Gene Blackburn, Law Offices of M. Gene Blackburn, P.C., Fort Dodge, for appellant.

James A. McGlynn, Bottorff, Greenley & McGlynn, Webster City, for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, CARTER, and ANDREASEN, JJ.

ANDREASEN, Justice.

This case involves the discharge of an employee in retaliation for filing a workers' compensation claim. The jury found for the employee, and awarded $33,000 compensatory and $100,000 punitive damages. This appeal and cross-appeal followed.

In June of 1985 John W. Smith (Smith) began work as a truck driver for Smithway Motor Xpress, Inc. (SMX). Smith participated in SMX's orientation program and signed for a copy of the SMX safety program. Under that program, drivers were required to report any accident as soon as possible, within two hours if physically able.

On October 3, 1985, Smith injured his back while loading his truck. Smith, who was on the road at the time, contends that

he called a dispatcher at SMX within fifteen minutes and was told that no other drivers were available and that he should finish his trip if possible. SMX contends that Smith did not timely report his injury to the proper company official. According to Smith, he continued with his assigned route, reporting his injury to the dispatcher on a daily basis, until he returned home seven days later. Upon returning to his home terminal, Smith filed a formal, written report of his injury with the safety director. At that time SMX made no objection to the manner in which Smith reported the injury.

Due to his injury, Smith was hospitalized and unable to work for four months. During that time he received workers' compensation benefits. SMX did not interfere with the payment of the benefits. On February 10, 1986, Smith was released to return to work by his doctor. The next day he reported to work at SMX and was fired without explanation. When Smith subsequently applied for unemployment compensation, SMX objected, stating that Smith was terminated for failing timely to report an injury as required by the SMX safety program.

Under the SMX safety program each driver was initially credited with twelve points. For each safety violation, points were deducted according to a set schedule. Loss of all twelve points resulted in termination. Prior to his back injury, Smith had all twelve points. Despite the fact that the schedule called for a six point deduction for failure timely to report an accident, SMX claimed at the unemployment compensation hearing that it assessed twelve points against Smith for failing to report his accident to the safety director within two hours. At trial, SMX raised for the first time additional alleged reasons for firing Smith, including provisions of the Federal Motor Carriers Act and a loss of trust in Smith.

The jury found that SMX had discharged Smith in retaliation for Smith's filing of a workers' compensation claim. Both parties have appealed.

I. *Trial Court's Denial of SMX's Motions.*

■ SMX urges first that the district court erred in denying its motions for directed verdict and judgment notwithstanding the verdict. In determining this issue we view the evidence in accordance with the same principles required for review by the trial court. *Slocum v. Hammond*, 346 N.W.2d 485, 493 (Iowa 1984). The standard is whether there was sufficient evidence to justify submitting the question to the jury. *Id.* at 493. We must

> view the evidence in the light most favorable to the party against whom the motions were made regardless of whether it is contradicted and every legitimate inference that may be fairly and reasonably deducted therefrom must be carried to the aid of the evidence. If ... there is substantial evidence in support of each element of plaintiff's claim, the motion ... should be denied.... Conversely, if there is no substantial evidence ... a directed verdict or judgment notwithstanding the verdict in defendant's favor is appropriate.

*Id.* at 494.

■ Here, evidence showed that Smith was fired after filing a workers' compensation claim when SMX's own safety program would call for only a deduction of six points. While Smith, as an employee at will, was subject to termination for any reason or no reason, SMX's deviation from its established program was something the jury could consider. There was also evidence that SMX's insurance director, not its personnel director, made the decision to fire Smith. There was also evidence that the personnel director advised against the discharge, predicting litigation if Smith was fired. Moreover, the insurance director conceded that the cost of paying workers' compensation benefits entered into his decision to fire Smith. This and other evidence was sufficient to justify submitting the question to the jury.

■ SMX claims, however, that since it did not interfere with Smith's eligibility to receive workers' compensation benefits, our previous cases dealing with retaliatory

discharge do not apply. In *Springer v. Weeks & Leo Co.,* 429 N.W.2d 558 (Iowa 1988), we first recognized that there is a cause of action for retaliatory discharge due to the filing of a workers' compensation claim. We held in *Springer* that if the discharge of an employee at will is in violation of public policy, the employee has a cause of action in tort against the employer. *Id.* at 560–61.

SMX claims that since it did not interfere with Smith's workers' compensation benefits it did not clearly violate any public policy. We disagree. The public policy involved in this case is expressed in Iowa Code section 85.18 (1985), which provides: "[n]o contract, rule, or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this chapter except as herein provided." We must now decide whether this policy can be violated although the employee is allowed to receive his benefits without interference. In *Springer,* however, we cited with approval *Frampton v. Central Ind. Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973). In *Frampton,* the seminal case in the area of retaliatory discharge for the filing of a workers' compensation claim, the Indiana Supreme Court was faced with a situation similar to the one before us. The court, construing a statute very similar to Iowa's, stated:

> [I]n order for the goals of the Act to be realized and for public policy to be effectuated, the employee must be able to exercise his right in an unfettered fashion without being subject to reprisal. If employers are permitted to penalize employees for filing workmen's compensation claims, a most important public policy will be undermined. The fear of being discharged would have a deleterious effect on the exercise of a statutory right. Employees will not file claims for justly deserved compensation—opting, instead, to continue their employment without incident. The end result, of course, is that the employer is effectively relieved of his obligation.
>
> . . . .
>
> We believe the threat of discharge to be a "device" within the framework of [the

statute], and hence, in clear contravention of public policy.

*Id.* at 252, 297 N.E.2d at 427–28.

We agree with the Indiana Supreme Court that retaliatory discharge violates public policy even if the employer does not interfere with the discharged employee's benefits. The trial court was correct in denying SMX's motions for directed verdict and judgment notwithstanding the verdict.

## II. *Defendant's Requested Instructions.*

■ SMX contends that the trial court erred when it declined to give the jury certain instructions which SMX had requested. These three requested instructions all dealt with the issue of public policy. In short, they instruct that SMX had the right to fire Smith if he violated a company policy designed to protect the public. One of the requested instructions, paraphrasing 49 U.S.C.A.App. § 2505(a) (1983), specified that it is public policy to prevent motor vehicle operators from driving when the driver's ability or alertness is impaired or is likely to become so.

The trial court rejected all three instructions on the grounds that they were superfluous in light of another instruction which was as follows:

> There is evidence in this case that Plaintiff was an at-will employee. An employee at-will may be terminated at any time for any reason, except if it is contrary to public policy of this state. You are instructed that it is against the public policy of the state to discharge an employee for filing a workers' compensation claim.

■ Under Iowa law, a court should give a requested instruction when it states a correct rule of law having application to the facts of the case and the concept is not otherwise embodied in the other instructions. *Stover v. Lakeland Square Owners Ass'n,* 434 N.W.2d 866, 868 (Iowa 1989). However, error in giving or refusing to give a particular instruction does not warrant reversal unless the error is prejudicial. *Id.*

Here the concepts expressed in SMX's requested instructions were embodied in the instructions given. While the court did not specifically instruct the jury that SMX had the right to fire Smith if Smith violated company policy, it did inform the jury that SMX could fire Smith "at any time for any reason." This obviously encompasses the situation postulated by SMX's requested instruction. We hold that SMX was not prejudiced by the court's refusal to give the requested instructions.

### III. Jury Instruction on Motive.

■ SMX contends that the trial court erred in instructing the jury that Smith had the burden of proving that his claim for workers' compensation benefits was the "determining factor" in SMX's decision to fire Smith. SMX urges that the workers' compensation claim must be proved to be the "predominant and improper purpose" behind the firing.

■ The type of retaliatory discharge alleged is improper. It is not necessary for the plaintiff to prove that the discharge was both due to the claim of workers' compensation benefits *and* improper; if the former is true then the latter is true also. The trial court did not err in omitting that portion of SMX's requested instruction.

The real issue is whether the claim for workers' compensation benefits must be the determining factor or the predominant purpose behind the firing. A purpose is predominant if it is the primary consideration in making a decision; while other reasons may exist, they are less influential than the predominant purpose. A "determinative factor," on the other hand, need not be the main reason behind the decision. It need only be the reason which tips the scales decisively one way or the other.

■ SMX relies on *Harsha v. State Savings Bank*, 346 N.W.2d 791 (Iowa 1984), to support its contention that the workers' compensation claim must be the predominant purpose behind Smith's discharge. In *Harsha*, a case dealing with interference with prospective business relationships, we stated that if a defendant acts for two or more purposes, the improper purpose must predominate in order to create liability. *Id.* at 799. *See also Toney v. Casey's General Stores, Inc.*, 460 N.W.2d 849 (Iowa 1990) (same test applied to typical interference with contract claim). In *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558 (Iowa 1988), we characterized the retaliatory discharge as a variety of the tort of interference with the contract of hire. *Id.* at 560. SMX contends that under *Harsha* and the restatement (second) of torts, the same standards should apply to the tort of interference with contract. It is clear however, that retaliatory discharge for filing a workers' compensation claim is quite different from a typical instance of interference with contract such as *Toney*. In fact, because the tortfeasor in a situation such as the one before us is a party to the contract, the Restatement would exclude such a situation from its definition of interference with contract. Restatement (Second) of Torts § 766 (19—).

In recognizing that an employee who was fired for filing a workers' compensation claim has a cause of action against the employer, we relied upon Iowa Code section 85.18 (1987). *Springer* at 561. We return to that section to determine the degree to which the retaliatory motive must influence the employer's decision to fire.

As we pointed out in *Springer*, 429 N.W.2d at 561, retaliatory discharge relieves the employer of his responsibility by intimidating employees into foregoing the benefits to which they are entitled in order to keep their jobs. This intimidation occurs even if retaliation is not the predominant purpose for the firing. If retaliation is allowed to weigh at all in the employer's decision to discharge, there will be a chilling effect on employees entitled to claim benefits. This would clearly conflict with the public policy expressed in section 85.18. The trial court did not err in instructing the jury as it did.

### IV. Punitive Damages.

■ The issue of punitive damages is controlled by Iowa Code section 668A.1. Under that section the jury must answer a

special interrogatory stating, among other things, "whether, by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another." Iowa Code § 668A.1.

SMX urges that it could not have willfully and wantonly disregarded Smith's rights because at the time Smith was discharged, Iowa had not yet adopted the public policy exception to the employment at will doctrine. *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558 (Iowa 1988). Therefore, it urges, since SMX did not know that Smith had a right not to be discharged for filing a workers' compensation claim, it could not have willfully and wantonly disregarded that right. Smith replies that his rights were created not by our decision in *Springer*, but by the adoption of Iowa Code section 85.18.

While Smith is correct in stating that his rights arise from the Iowa Code rather than from this court's decision in *Springer*, it is equally clear that prior to *Springer* there was in Iowa no recognized cause of action for retaliatory discharge arising from a claim for workers' compensation benefits. *Springer* could have been decided the other way; indeed three members of the court dissented from the majority opinion in *Springer*. Moreover, there are states which have declined to recognize the tort which we recognized for the first time in *Springer*. *See, e.g., Williams v. AMAX Chemical Corp.*, 104 N.M. 293, 720 P.2d 1234 (1986); *Kelly v. Mississippi Valley Gas Co.*, 397 So.2d 874 (Miss.1981); *Martin v. Tapley*, 360 So.2d 708 (Ala.1978).

Under such circumstances many of the courts confronted with the issue have held that punitive damages should not be awarded in the case that first recognizes the tort of retaliatory discharge due to a workers' compensation claim. *Hansen v. Harrah's*, 100 Nev. 60, 675 P.2d 394 (1984); *Kelsay v. Motorola, Inc.*, 23 Ill.Dec. 559, 74 Ill.2d 172, 384 N.E.2d 353 (1979); *Clanton v. Cain–Sloan Co.*, 677 S.W.2d 441 (Tenn. 1984); *Brown v. Transcon Lines*, 284 Or. 597, 588 P.2d 1087 (1978); *but see Krein v.*

*Marian Manor Nursing Home*, 415 N.W.2d 793 (N.D.1987). While the case before us now is not the first of its kind in Iowa, all the relevant events took place prior to our decision in *Springer*, and thus SMX received no benefit from that decision.

As the Oregon Supreme Court noted in *Brown*, "[t]here may also be additional reasons why punitive damages should be denied in such an action, but which we need not consider in this case." *Brown*, 588 P.2d at 1095. We hold that punitive damages should not have been awarded in this case. We therefore reverse the trial court on this issue.

### V. *Future Damages.*

The trial court refused to submit the issue of future damages to the jury, stating that in a tort action such as this, all future damages are limited to those arising out of a loss of future earning capacity. Most courts which have allowed future damages for wrongful discharge, however, have not been so restrictive. *See, e.g., Smith v. Atlas Off–Shore Boat Serv., Inc.*, 653 F.2d 1057 (5th Cir.1981); *Goins v. Ford Motor Co.*, 347 N.W.2d 184 (Mich.App. 1983); *See also Whittlesey v. Union Carbide Corp.*, 742 F.2d 724 (2d Cir.1984) (dealing with age discrimination).

We agree with these courts that under proper circumstances a wrongfully discharged employee should be permitted to recover lost future earnings if the employee's new job provides less remuneration than did his job with the defendant. "The award for such loss must be based on the likely duration of the terminated employment." *Atlas*, 653 F.2d at 1064 n. 23. *Contra, Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1101 n. 8 (8th Cir.1982) (The court stated in an age discrimination context that "a district court generally will assume, absent evidence to the contrary, that the illegally discharged employee would have continued working for the employer until ... retirement age."); *Goins*, 347 N.W.2d 184 (jury allowed to base calculation of damages upon the difference between plaintiff's wage while employed by

defendant and his wage with new employer "for the forty years of plaintiff's life expectancy").[1]

The biggest problem in awarding future damages for the wrongful discharge of an at-will employee is avoiding speculation. With no contract for guidance, it is often difficult, if not impossible, to know how long the employee would have continued to work for the employer. It is well established, however, that "while recovery will be denied if it is speculative and uncertain whether damage has been sustained, recovery will not be denied merely because the amount of damages is difficult to ascertain." *Robinson v. Perpetual Servs. Corp.*, 412 N.W.2d 562 (Iowa 1987).

Future damages in this context are very similar to the award of "front pay" in employment discrimination actions. In *Whittlesey*, the court stated:

> while we agree that an award of future damages carries with it some risk of uncertainty and may, indeed, be speculative in some cases, we do not believe the risk to be so great as to preclude automatically front pay in every case.

742 F.2d at 728. As the *Whittlesey* court pointed out, preclusion of future damages "would permit the defendant's liability for its unlawful action to end at the time of judgment." *Id.*

Thus, Smith is entitled to lost future wages if the jury concludes from the evidence that Smith would have been employed by SMX subsequent to the date of trial had it not been for the workers' compensation claim. The jury must then determine the likely duration of Smith's employment at SMX. The proper award would then be the difference between Smith's wages at SMX and his wages at his new job for that period. This amount must then be reduced to present value.

We conclude that Smith presented sufficient evidence to submit his claim for future damages to the jury. The evidence, if accepted by the jury, could establish that Smith could have made $30,000 per year working at SMX and that at his new job he can earn only $20,500. The evidence also would support a finding that if a driver for SMX did his job, obeyed the rules and did not have an accident, he would continue to be employed. While the evidence does not conclusively establish any particular amount of lost future earnings, all that is required to justify an award of damages "is that the plaintiff produce the best evidence available and that this evidence afford a reasonable basis for estimating the loss." *Nicholson v. City of Des Moines*, 246 Iowa 318, 327, 67 N.W.2d 533, 538 (1954). "So long as there is a reasonable basis in the record from which the amount of damages can be inferred or approximated, recovery will be allowed." *Robinson* at 567. We reverse the trial court on the issue of future damages and remand for a new trial only on this issue.

Costs of appeal shall be equally assessed against the parties.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

1. Two panels of the Michigan court of appeals which have considered the question subsequently have held that this type of wrongful discharge is more properly viewed as a contract action rather than in tort. *Lopus v. L & L Shop–Rite, Inc.*, 430 N.W.2d 757 (Mich.App.1988); *Watassek v. Mich., Dep't of Mental Health*, 143 Mich. App. 556, 372 N.W.2d 617 (1985).