EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| José Miguel Mestres Dosal          Peticionario                  vs.    María del Carmen Dosal Escandón, et als.          Recurridos | Certiorari  2008 TSPR 20  173 DPR _____ |
|---|---|

Número del Caso: CC-2006-814

Fecha: 7 de febrero de 2008

Tribunal de Apelaciones:

>  Región Judicial de Arecibo –Panel VII

Juez Ponente:

>  Hon. Gretchen Coll Martí

Abogado de la Parte Peticionaria:

>  Lcdo. Ángel M. Bonnet Rosario

Abogados de la Parte Recurrida:

>  Lcdo. Héctor A. Cortés Babilonia
>  Lcdo. Héctor Santos Ortiz

Materia: Despido Injustificado

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Miguel Mestres Dosal

     Peticionario

        v.

María del Carmen Dosal,                 CC-2006-814
Escandón, et als,

     Recurridos

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 7 de febrero 2008

En esta ocasión nos corresponde determinar si en una reclamación de discrimen por razón de edad instada bajo la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. secs. 146-151, (Ley Núm. 100) un reclamante despedido luego de haber cumplido los 65 años, puede recuperar una partida en concepto de daños por ingresos dejados de percibir. Resolvemos en la afirmativa.

**I.**

El señor José Miguel Mestres Dosal presentó una querella sobre despido ilegal contra María del Carmen Dosal Escandón, su madre, contra el Laboratorio Clínico Román, y contra el señor Rafael Mestres

Dosal, su hermano. La querella se presentó bajo el procedimiento sumario de la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. secs. 3118-3132. En la misma, Mestres Dosal señaló que desde el 1ero de julio de 1995 laboraba bajo un contrato de trabajo sin término fijo en el Laboratorio Clínico Román, el cual pertenecía a su madre y era administrado por su hermano. Alegó, que al cumplir la edad de sesenta y cinco (65) años, su hermano Rafael le indicó que tenía que retirarse del trabajo y acogerse a los beneficios del Seguro Social. Tras su renuencia a acogerse al retiro, fue despedido el 31 de julio de 2003. A la fecha del despido, Mestres Dosal tenía 65 años de edad.

Basado en los hechos reseñados, el querellante arguyó en la querella que fue objeto de discrimen por edad en contravención a la Ley Núm. 100. Solicitó como remedio la reposición en el empleo y el pago del doble de los salarios dejados de recibir hasta el momento en que se le repusiera en el empleo. Reclamó también el pago de unas sumas por daños morales, vacaciones y por no disfrutar del periodo para tomar alimentos.

Luego de contestar la querella, la parte querellada presentó una moción de desestimación en la que alegó, entre otras cosas, que la reclamación debía ser desestimada por contravenir la doctrina de inmunidad familiar. Se alegó también que la querella era inmeritoria pues el querellante había solicitado y obtenido los beneficios del Seguro Social. Por último, se adujo que los hechos ocurrieron luego de que

el querellante cumpliera sesenta y cinco (65) años de edad, cuando éste ya había excedido la expectativa de vida útil por lo que su reclamo sobre el pago de salarios dejados de percibir era improcedente. El querellante presentó la correspondiente oposición.

Así las cosas, el Tribunal de Primera Instancia declaró sin lugar la solicitud de desestimación de la parte querellada y convirtió el proceso en uno ordinario. Los querellados entonces presentaron una moción de reconsideración en la que alegaron que según *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485 (1985), el empleado despedido discriminatoriamente tiene derecho a que se le compensen los ingresos que pudiera devengar hasta los sesenta y cinco (65) años por ser ésta la edad de retiro. Siendo así, el querellante, de prevalecer, sólo tendría derecho al remedio en daños mas no al pago de salarios prospectivos o retroactivos por haber rebasado la edad de 65 años.

En su oposición, el querellante adujo que los hechos que dieron lugar a *Odriozola v. S. Cosmetic Dist. Corp., supra,* ocurrieron cuando la Ley Núm. 100 establecía un límite de protección hasta los sesenta y cinco (65) años de edad, límite que fue eliminado de la ley. En vista de lo cual, la doctrina de *Odriozola v. S. Cosmetic Dist. Corp., supra,* no aplicaba al caso de autos.

El tribunal de instancia acogió el planteamiento de los querellados y declaró con lugar la moción de reconsideración. Con este proceder, limitó la compensación a la cual podría

tener derecho el querellante, al excluir el pago de salarios dejados de percibir como daño resarcible. Inconforme con dicha determinación, el querellante acudió ante el Tribunal de Apelaciones.

El foro apelativo, mediante resolución, se negó a expedir el auto de *certiorari.* Explicó en su denegatoria que, aun cuando no existe límite a la edad protegida por la Ley Núm. 100, en la generalidad de los casos resueltos a excepción de *Suro v. E.L.A.*, 111 D.P.R. 456 (1981), la expectativa de vida útil de una persona ha sido estimada en los sesenta y cinco años. Concluyó que según *Odriozola v. S. Cosmetic Dist. Corp., supra,* un querellante no podía reclamar lucro cesante pretérito ("back pay"), ni lucro cesante futuro ("front pay"), a partir de la fecha en que cumplió la edad de sesenta y cinco años, así como tampoco tendría derecho a la reposición en el empleo. Concluyó entonces que no había errado el foro primario en su determinación.

Inconforme aún, el señor Mestres Dosal acudió ante nosotros mediante un recurso de *certiorari.* Luego de que la parte recurrida presentara su oposición, el 1 de diciembre de 2006 expedimos el auto. Ambas partes han comparecido por lo que pasamos a resolver.

## II.

La Asamblea Legislativa aprobó la Ley Núm. 100, para ofrecer una eficaz protección a los trabajadores contra diversos tipos de discrimen en el ámbito laboral. *Suárez Ruiz v. Figueroa Colón*, 145 D.P.R. 142, 145 (1998); *Díaz v.*

*Windham Hotel Corp.*, 155 D.P.R. 364, 381 (2001). El estatuto prohíbe que un patrono despida, suspenda o discrimine contra un empleado por razón de edad, raza, color, sexo, origen social o nacional, condición social, afiliación política, o ideas políticas o religiosas, o por ser víctima de violencia doméstica, agresión sexual o acecho. Su propósito no es otro que la erradicación de las prácticas discriminatorias en el empleo propiciando así mayor igualdad de oportunidades en el empleo. Mediante esta legislación, junto a otras de igual naturaleza, la Asamblea Legislativa concretizó el mandato constitucional de esencial igualdad humana en el contexto obrero patronal.

La ley impone responsabilidad civil al patrono que incurra en conducta discriminatoria por una suma igual al doble de los daños que el acto discriminatorio cause al empleado.[1] El estatuto no establece limitación alguna en

---

[1] A esos efectos, la Ley Núm. 100 dispone:

Todo patrono que despida, suspenda o discrimine contra un empleado suyo en relación a su sueldo, salario, jornal o compensación, términos, categorías, condiciones o privilegios de su trabajo, o que deje de emplear o rehúse emplear o reemplear a una persona, o limite o clasifique sus empleados en cualquier forma que tienda a privar a una persona de oportunidades de empleo o que afecten su status de empleado, por razón de edad, según ésta se define más adelante, raza, color, sexo, origen social o nacional, condición social, afiliación política, o ideas políticas o religiosas, o por ser víctima o ser percibida como víctima de violencia doméstica, agresión sexual o acecho del empleado o solicitante de empleo:
(a) Incurrirá en responsabilidad civil:
    (1) Por una suma igual al doble del importe de los daños que el acto haya causado al empleado o solicitante de empleo;

cuanto al tipo de daño que ha de resarcirse, por lo que el empleado tiene derecho a que se le compensen tanto los daños emocionales como los económicos, incluyendo una partida por la pérdida de ingresos. *García Pagán v. Shiley Caribbean, etc.*, 122 D.P.R. 193, 212 (1988); *Berríos v. González et al.,* 151 D.P.R. 327, 342 (2000).

La Ley Núm. 100 reconoce el derecho del empleado discriminado a la reposición en el empleo en aquellos casos que se estime apropiado. Así, hemos señalado que la reposición en el empleo es "el remedio preferente en casos de despido por discrimen". *López Vicil v. ITT Intermedia, Inc.*, 142 D.P.R. 857, 866 (1997); *S.L.G. Afanador v. Roger Electric Co., Inc.,* 156 D.P.R. 651, 668 (2002). Por esta razón, siempre que sea posible, el empleado debe ser reinstalado en su trabajo. Este es el remedio más completo, aún cuando no siempre sea posible. *S.L.G. Afanador, supra*, pág. 669.

---

(2) o por una suma no menor de quinientos dólares ($500) ni mayor de dos mil dólares ($2,000), a discreción del tribunal, si no se pudieren determinar daños pecuniarios;

(3) o el doble de la cantidad de los daños ocasionados si ésta fuere inferior a la suma de quinientos dólares ($500), y;

(b) incurrirá, además, en un delito menos grave y, convicto que fuere, será castigado con multa no menor de cien dólares ($500) ni mayor de dos mil dólares ($2,000), o cárcel por un término no menor de seis, o ambas penas, a discreción del tribunal.

….

El tribunal en la sentencia que dicte en acciones civiles interpuestas bajo las precedentes disposiciones podrá ordenar al patrono que reponga en su empleo al trabajador y que cese y desista del acto de que se trate.

Artículo 1 de la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. sec. 146.

Por otro lado, la compensación por daños económicos dependerá, en gran medida, de si el empleado puede ser reinstalado a su trabajo. En tal rigor, cuando proceda la reposición en el empleo, la compensación en concepto de salarios dejados de recibir se limita a los salarios que hubiese recibido el empleado desde su despido hasta dictada sentencia. Por el contrario, cuando la reposición no sea posible, el empleado podría ser acreedor a una compensación adicional en concepto de daños por la pérdida de ingresos futuros. *López Vicil v. ITT Intermedia, Inc., supra,* pág. 866-867; *S.L.G. Afanador v. Roger Electric Co., Inc., supra,* págs. 668-669.

Fijados los contornos generales de la Ley Núm. 100, pasemos a analizar en mayor detenimiento la controversia que hoy nos ocupa.

## III.

## A.

La controversia ante nuestra consideración versa sobre el remedio al que tiene derecho un empleado mayor de sesenta y cinco años que ha sido despedido a causa de discrimen por razón de edad. Con el propósito de dilucidar la naturaleza de los remedios disponibles para un querellante bajo estas circunstancias, debemos comenzar examinando detenidamente las enmiendas que ha sufrido la Ley Núm. 100 desde su aprobación, relacionadas con la edad de las personas protegidas por el estatuto.

Esta tarea la emprendemos con el entendimiento de que en las reclamaciones de discrimen en el empleo, debemos tomar en consideración los valores sociales y económicos que subyacen la legislación laboral, que no son otros sino la protección de la clase trabajadora.  De esta forma, procuramos aquella interpretación que sea más favorable para el empleado víctima de discrimen.  Ello sin menospreciar, claro está, los intereses y prerrogativas patronales que el sistema económico les reconoce a estos últimos.

**B.**

Inicialmente, la Ley 100 prohibía el discrimen por razón de "edad avanzada" y definía "edad avanzada" como la edad comprendida entre los treinta (30) y sesenta y cinco (65) años.  Artículos 1 y 6 de la Ley Núm. 100 de 30 de junio de 1959, 1959 Leyes de Puerto Rico, págs. 301 y 303.  Con la aprobación de la Ley Núm. 37 de 7 de junio de 1977, se enmendó el estatuto para prohibir el discrimen por edad en cualquier contexto, no sólo por razón de edad avanzada. *SLG Hernández Beltrán v. TOLIC*, 151 D.P.R. 754, 774 (2000).  A esos fines, se sustituyó la edad mínima protegida de treinta y cinco (35) años por "la edad mínima en que legalmente se permita trabajar a los menores".  Ley Núm. 37 de 7 de junio de 1977, 1977 Leyes de Puerto Rico, pág. 88.  No obstante, el máximo de la edad protegida se mantuvo en sesenta y cinco (65) años.

En el 1983 se enmendó la Ley Núm. 100 nuevamente para aumentar el máximo de la edad protegida de sesenta y cinco

(65) años a setenta (70) años. Ley Núm. 67 de 3 de junio de 1983, 1983 Leyes de Puerto Rico, págs. 150-154. La exposición de motivos de esta ley nos permite concluir que fueron dos las motivaciones que animaron al legislador. Por un lado, el reconocimiento de que el problema de discriminación de trabajadores de más edad se iba acrecentando con el transcurso del tiempo y que cada vez eran más las reclamaciones de este tipo. Las empresas, haciéndose eco de una cultura que sublima los valores y la estética de la juventud, sistemáticamente, contrataban, promocionaban y beneficiaban a sus empleados más jóvenes en perjuicio de los de mayor edad. Además, con la enmienda, se pretendió atemperar nuestra legislación a las disposiciones del "Age Discrimination in Employment Act" (ADEA), 29 U.S.C.A. secs. 621-634, contraparte de la Ley Núm. 100 en el ámbito federal. En ese momento, la ADEA establecía como edad límite de protección los setenta (70) años. Actualmente, la ADEA protege a personas mayores de (40) años de edad, sin tope alguno.[2]

Finalmente, en 1990 la Ley Núm. 100 fue objeto de enmienda, esta vez para eliminar el tope de setenta (70) años de la edad protegida. Ley Núm. 32 de 8 de diciembre de 1990, 1990 Leyes de Puerto Rico, pág. 1524. Así, actualmente, el Artículo 6 de la Ley Núm. 100, 29 L.P.R.A. sec. 151, define

---

[2] "The prohibitions in this Act shall be limited to individuals who are at least 40 years of age." Age Discrimination in Employment Act, sec. 12 (a), 29 U.S.C. sec. 631 (a).

edad como "cualquier edad desde la edad mínima en que legalmente se permita trabajar a los menores, de acuerdo con la ocupación o industria de que se trate, sin límite alguno". *Díaz v. Windham Hotel Corp., supra*, pág. 380.

Con este cambio en la ley se pretendió ofrecer la más amplia protección al trabajador, eliminando la barrera artificial de edad máxima de protección. Ello propicia el empleo de las personas de más edad utilizando como criterio las destrezas y capacidades del trabajador y no su edad. De otra parte, con este cambio se superan las nociones estereotipadas sobre el efecto que tiene, o puede tener, el proceso de madurez sobre las capacidades de un trabajador para despeñar adecuadamente las funciones de su trabajo.[3] Este cambio de enfoque es reflejo del reconocimiento de que, de ordinario, la edad de las personas no es un factor decisivo para determinar si un empleado está o no cualificado para realizar las labores de un empleo.[4]

Obsérvese además, que el Art. 3 de la Ley Núm. 100, 29 L.P.R.A. sec. 148, proscribe el despido de un empleado sin justa causa. "[T]odo despido discriminatorio … es injustificado." *Díaz v. Windham Hotel Corp., supra,* pág.

---

[3] Sobre este particular véase, Craver, The Application of the Age Discrimination in Employment Act to Persons over Seventy, 78 *Geo. Wash. L. Rev.* 52 (1990).

[4] Advertimos sin embargo, que no obstante lo reseñado, hay oficios o trabajos donde la edad de la persona puede considerarse como un requisito ocupacional *bona fide* para el adecuado desempeño de ese trabajo u oficio. *E.g.*, 29 U.S.C. sec. 623(f)(1). En estos casos, la Ley Núm. 100, no ofrece particular protección porque el trabajador no estaría cualificado para desempeñarse en ese empleo.

387; *SLG Hernández Beltrán v. TOLIC, supra*, págs. 775 y 778. Por el contrario, el patrono que despida a un empleado mediando justa causa para ello no puede ser responsable de discrimen bajo la Ley Núm. 100. *Díaz v. Windham Hotel Corp., supra,* págs. 387-391; *López Vicil v. ITT Intermedia, Inc., supra,* pág. 863.

En términos generales entonces, el que una persona no esté cualificada para realizar las labores de su empleo es justa causa para el despido. Con lo cual, para que se pueda concluir que un patrono ha incurrido en discrimen, el empleado tiene que estar "cualificado para ejercer el puesto que ocupa". *Díaz v. Windham Hotel Corp., supra*, pág. 390. Por lo tanto, se configura el discrimen por razón de edad cuando el patrono despide a una **persona cualificada** para realizar sus labores, por razón de su edad.

Conforme dispone la Ley Núm. 100, la edad del empleado no es criterio de relevancia para determinar si se está o no cualificado para un empleo. De lo contrario, tendríamos que concluir que el legislador arropó con el manto de protección de la Ley Núm. 100 a un grupo de personas no cualificadas para desempeñar las labores de su empleo. En atención a ello resolvemos que como resultado de la eliminación de la edad máxima protegida establecida en la Ley Núm. 100, esta **ley no establece una edad específica hasta la cual una persona está cualificada para trabajar.**

No obstante lo anterior, los recurridos alegan que aun cuando el peticionario se encuentra dentro del grupo de

personas protegidas por la Ley Núm. 100, no tiene derecho a todos los remedios que el estatuto provee. En específico, sostienen que éste no tiene derecho a la reposición en el empleo, a los salarios dejados de recibir ni a los salarios futuros que se conceden en los casos en que la reposición en el empleo no es posible, por haber rebasado los sesenta y cinco (65) años de edad. No tienen razón.

Si como hemos dicho, Ley Núm. 100 se enmendó para ampliar su marco de protección al eliminar la edad máxima protegida en reconocimiento de que, de ordinario, la edad no es un criterio para concluir si una persona está o no cualificada para trabajar, no es razonable concluir que ello no obstante, esa persona cualificada para trabajar no tiene derecho a todos los remedios que la ley le reconoce. Si el legislador reconoció que estas personas están aptas para trabajar, es un contra sentido limitarle los remedios disponibles. Avalar una interpretación en el sentido propuesto es de todo punto incompatible y contraria al propósito que animó la aprobación de la ley.

En atención a lo anterior, resolvemos que en una reclamación de discrimen por edad instada bajo la Ley Núm. 100 por una persona mayor de sesenta y cinco años, probado el discrimen, el trabajador discriminado tendrá derecho a todos los remedios que la ley reconoce, incluyendo la reposición en el empleo, y si ello no fuere posible, a una compensación en concepto de daños por la pérdida de ingresos futuros.

Nos resta ahora atender cómo se hará el cálculo de los ingresos dejados de percibir en estos casos.

**IV.**

Iniciamos nuestra discusión reconociendo que la determinación de una partida por concepto de paga prospectiva conlleva, necesariamente, cierto grado de especulación. *S.L.G. Afanador, supra*. Esta especulación sin embargo, no es impedimento para su concesión. En *Afanador* indicamos que en esta tarea el foro primario debe tomar en cuenta lo siguiente: "si el demandante ha mitigado daños; si ha aportado evidencia de que, hasta la fecha de su retiro no iba a ser posible obtener un trabajo comparable al que tenía previo a los actos discriminatorios; y si la fecha estimada de retiro es una plausible." *S.L.G. Afanador, supra,* pág. 670.

Algo similar indicamos en *Odriozola v. S. Cosmetic Dist. Corp., supra,* págs. 509-510, al señalar que "el empleado despedido discriminatoriamente por edad tiene derecho a que se le compense por ingresos futuros que pudiera devengar **hasta la edad del retiro.**" (Énfasis nuestro). Al hacer estas expresiones nos apoyamos en lo resuelto por el Tribunal de Apelaciones de los Estados Unidos para el Segundo Circuito, en *Whittesey v. Union Carbite Corp.*, 742 F.2d 724 (2do Cir. 1984). Allí se dispuso que si el demandante no tenía una probabilidad real de conseguir otro empleo equiparable al que tenía procedía la compensación por la pérdida de ingresos futuros y se concedería hasta la edad de

setenta (70) años, pues esa era la edad límite de protección bajo la ADEA.[5]

En *Whittesey*, el tribunal de apelaciones federal utilizó los siguientes criterios para considerar si procedía la paga prospectiva: la probabilidad del empleado despedido de obtener un empleo comparable, la edad máxima de protección bajo ADEA, y la política de retiro compulsorio que pudiese tener la empresa demandada, específicamente, la edad dispuesta para el retiro. Evaluemos estos factores a la luz de nuestro ordenamiento jurídico actual.

---

[5] Específicamente, en aquel caso se indicó:

> Judge Leval was within his discretion in allowing front pay for the full period from trial until Whittlesey would reach age 70, **when compulsory retirement could be imposed without violating the ADEA.** …
>
> In sum, we think that front pay is, in limited circumstances, an appropriate remedy under the ADEA. It serves a necessary role in making victims of discrimination whole **in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment.** Given the high level of Whittlesey's position at Union Carbide and the few years remaining **before he will be outside the protection of the ADEA**, the award of front pay in this case did not require undue speculation, either as to the possibility of mitigation, or as to the amount he would have made at Union Carbide had he not been fired. To have denied him compensation for the losses he would otherwise suffer during those years would have been inconsistent with the act's purposes. It would have been particularly inappropriate in a case like this one where the district court found the impossibility of reinstatement to be the fault of the employer. (Énfasis nuestro.)

*Whittesey v. Union Carbite Corp.,* 742 F.2d 724, 729 (2do Cir. 1984).

Como ya hemos resaltado, la Ley Núm. 100 no contiene una edad máxima de protección por lo que dicho factor no se ha de considerar en estos casos. Ahora bien, los otros dos factores, a saber: la probabilidad real de conseguir otro empleo comparable y la existencia de una política legítima de retiro obligatorio en la empresa, son factores a ponderar. Entonces, somos del criterio que para establecer la compensación por la pérdida de salarios futuros los tribunales deben determinar, en primer turno, si el empleado despedido tiene una probabilidad real de obtener otro empleo similar y, de concluirse que no existe tal probabilidad, procede vislumbrar si la entidad para la cual trabajaba mantenía o no una política legítima de retiro obligatorio.

Cuando se determine que el empleado despedido no tiene una probabilidad real de conseguir otro empleo similar y el empleado discriminado trabajara en una entidad que mantuviera una política legítima de retiro obligatorio, la edad establecida por dicha política sería la determinante al momento de computar la compensación por la pérdida de ingresos futuros. Ello así, ya que alcanzada dicha edad, el empleado vendría obligado a retirarse.[6]

Nos resta entonces determinar, cómo establecer la compensación por la pérdida de salarios futuros cuando no exista una política legítima de retiro obligatorio. La parte recurrida sostiene que en estos casos, la edad dispuesta para

---

[6] No estamos resolviendo en este momento lo que constituiría una política legítima de retiro obligatorio.

acogerse a los beneficios del Seguro Social es la edad definitoria. No compartimos este criterio. Nos explicamos.

Primero, aceptar la posición de los recurridos tendría el efecto de limitar la compensación de algunas personas por razón de su edad, independientemente de si están cualificadas o no para realizar las labores de su empleo. Como explicamos, dicho resultado sería contrario a la clara política pública establecida en la Ley Núm. 100 cuando se eliminó el límite de edad de las personas protegidas por la ley. Segundo, avalar este argumento es aceptar como válidos los estereotipos sobre la edad y sus efectos sobre el trabajador que el legislador pretendió eliminar al enmendar la Ley Núm. 100 en 1990. Recalcamos que el criterio rector bajo la Ley Núm. 100 es si el trabajador está o no cualificado para desempeñar las funciones de su empleo, pues si no está cualificado el patrono no incurre en acción discriminatoria cuando le despide.

Por lo tanto, para establecer la compensación por concepto de pérdida de salarios que ha de recibir un empleado que no tiene una probabilidad real de conseguir otro empleo comparable, **será necesario establecer la edad hasta la cual, con mayor probabilidad, dicho empleado estaría cualificado para realizar las labores de su empleo y en efecto las hubiese realizado de no haber sido despedido.** Véase*, Suro v. E.L.A.,* 111 D.P.R. 456, 461-462 (1981).

Esta es una determinación que se tomará caso a caso, pues los factores que inciden sobre dicho asunto son

múltiples y variados lo que impide que se designe una edad fija de antemano o se establezca una fórmula rígida a ser aplicada en todo caso. El estado de salud de la persona, sus hábitos de trabajo, la ocupación que ostenta o naturaleza del trabajo que desempeña, son sólo algunos de los factores que influyen en esa determinación.

Por último, la parte recurrida nos señala que en *López Vicil v. ITT Intermedia, Inc.*, *supra,* indicamos que el pago de salarios se computa hasta los sesenta y cinco (65) años de edad. Un examen detenido de este caso demuestra que la parte querellada nuevamente se equivoca.

En *López Vicil, supra*, nos enfrentamos a una situación en la cual el foro primario había dictado sentencia concediendo una compensación por la pérdida de ingresos futuros sin antes dilucidar si la reinstalación en el empleo era apropiada. Apoyados en *Odriozola, supra,* resolvimos que para conceder una compensación por la pérdida de ingresos futuros hasta los sesenta y cinco (65) años, cuando el querellante no había alcanzado dicha edad, era necesario determinar primero si éste podía ser reinstalado en su empleo.[7]

---

[7] En *López Vicil v. ITT Intermedia, Inc.*, 142 D.P.R. 857, 867 (1997), resolvimos en lo pertinente:

> Aquí, al momento de dictarse sentencia en instancia, la supervisora de López Vicil se había retirado de la empresa. Parecería que cualquier posibilidad de fricción en el empleo, pues, había desaparecido. Como López Vicil no había cumplido aun los 65 años, el tribunal de instancia debió dilucidar si la reinstalación era apropiada. *Odriozola u. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485, 509-510 (1985). Como aun a la fecha de hoy

Nótese que en *López Vicil* **no pasamos juicio sobre la edad hasta la que el querellante hubiese trabajado.** Por lo tanto, nuestros pronunciamientos en este caso no estaban dirigidos a establecer la edad hasta la cual ha de computarse la compensación por los salarios dejados de recibir, por lo que, no tienen el alcance pretendido.

A la luz del marco normativo antes expuesto, pasamos a resolver la controversia ante nuestra consideración.

**V.**

En el caso ante nuestra consideración el señor José Miguel Mestres Dosal fue despedido una vez cumplió sesenta y cinco (65) años de edad. Basado en lo anterior, Mestres Dosal presentó una querella alegando que fue objeto de discrimen por edad. La parte querellada arguyó que el peticionario no tendría derecho a los salarios dejados de recibir ni a los salarios futuros que se conceden en los casos en que la reposición en el empleo no es posible, por haber rebasado los sesenta y cinco (65) años de edad al momento de su alegado despido. El Tribunal de Primera Instancia acogió dicho planteamiento y el Tribunal de Apelaciones denegó la expedición del auto de *certiorari*. Inconforme, el querellante acudió ante nosotros.

---

restan varios años antes de que López Vicil llegue a la edad de 65, debe devolverse el caso al tribunal de instancia para que, luego de escuchar a las partes, determine si el remedio de reposición es jurídicamente posible. De ser ello así, la compensación en concepto de la pérdida económica se limitará a ingresos pasados.

Conforme lo discutido previamente revocamos la determinación de los foros anteriores y devolvemos al foro primario para que continúen los procesos. De quedar demostrado que el señor Mestres Dosal fue víctima de discrimen por edad, éste tendrá derecho a todos los remedios que la ley provee. Si se determinara que la reinstalación no es posible y que el peticionario no tiene una probabilidad real de conseguir otro empleo comparable, tendrá derecho a una compensación en concepto de pérdida de ingresos futuros hasta el momento en el cual, con mayor probabilidad, hubiese estado cualificado y en efecto hubiese realizado las labores de su empleo de no haber sido despedido.

En virtud de lo anterior, se dictará sentencia revocando la sentencia emitida por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos conforme lo aquí resuelto.

Se dictará sentencia de conformidad

                                    Anabelle Rodríguez Rodríguez
                                          Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Miguel Mestres Dosal

    Peticionario

       v.

María del Carmen Dosal,              CC-2006-814
Escandón, et als,

    Recurridos


SENTENCIA

San Juan, Puerto Rico, a 7 de febrero 2008

    Por los fundamentos expresados en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se revoca la sentencia emitida por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos conforme lo aquí resuelto.

    Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal.


                    Aida Ileana Oquendo Graulau
              Secretaria del Tribunal Supremo